COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Moon, Judge Annunziata and
          Senior Judge Hodges
Argued at Richmond, Virginia

TROY LEE NEWTON

v.      Record No. 1245-94-2                    OPINION BY
                                         JUDGE WILLIAM H. HODGES
COMMONWEALTH OF VIRGINIA                    SEPTEMBER 19, 1995


          FROM THE CIRCUIT COURT OF LOUISA COUNTY
               Paul M. Peatross, Jr., Judge

          John R. Maus for appellant.

          Michael T. Judge, Assistant Attorney General (James S.
          Gilmore, III, Attorney General, on brief), for
          appellee.


     Troy Lee Newton (appellant) was convicted in a bench trial

of robbery and aggravated malicious wounding.  On appeal,

appellant contends that the evidence was insufficient to support

his conviction for aggravated malicious wounding because the

injuries sustained by the victim did not constitute permanent and

significant physical impairment, as required by Code § 18.2-51.2.

We disagree and affirm the judgment of the trial court.

                              I.

     On October 12, 1993, appellant entered Andy's Chevron Mart

in Zion Crossroads at about 10:00 p.m. and purchased a can of

beer from Harry Ross Bryant, the only employee working at the

store.  Appellant then left the store.  As Bryant kneeled down to

get a roll of quarters from the safe, he looked up and saw that

appellant had returned to the store.

     Appellant told Bryant to give him the money.  Appellant

waved his hand at Bryant, and Bryant could see that appellant had

a box-cutter knife.  Again, appellant told Bryant to give him all

the money. Bryant complied. After appellant took the money, he told Bryant to get down on his knees. Appellant then began cutting Bryant with the razor. He cut Bryant on the cheek, under his eye, on the wrist, on the ear, and several times on the back. Appellant stepped on Bryant's glasses, which had fallen on the floor, and cut the cord to the telephone.

As he left, appellant told Bryant not to move. After a few minutes, however, Bryant called for help from the office telephone. He was taken to the emergency room at the University of Virginia Hospital, where doctors stitched wounds on his face, ear, and wrist. Other wounds were treated with antiseptic.

On October 17, 1993, appellant gave a statement to Investigator D. L. Bateman of the Louisa County Sheriff's Department. Appellant said that he was "high" on crack cocaine when he went into the store to buy beer, and as he left the store he thought about the money he had seen there. He said that he could not remember taking the money, but found a roll of money in his pocket and began having "flashbacks" in which he saw the clerk, who had been cut, lying on the floor. Appellant stated that he spent around $300 on cocaine the night of the robbery. He admitted to Bateman that he told his brother that he had cut someone.

At trial, Bryant displayed his scars for the judge. The judge noted that the scar on the right side of Bryant's face was "obvious and visible" and not covered, even by his beard.

Following the trial, the judge issued a letter opinion in which he found that appellant was guilty of aggravated malicious

-2-

wounding. The judge noted that the 1991 amendment to the aggravated malicious wounding statute "suggests that the legislature intended Aggravated Malicious Wounding to include injuries which do not prevent the victims functioning normally, but are nevertheless permanent and severe."

## II.

Appellant argues on appeal, as he did at trial, that the disfiguring scars which Bryant suffered as a result of the attack do not satisfy the requirement of the aggravated malicious wounding statute that the victim's injuries constitute "permanent and significant physical impairment."

In 1991, the General Assembly amended Code § 18.2-51.2, which defines aggravated malicious wounding. The legislature changed the provision requiring that the victim be "totally and permanently disabled" by the malicious wounding, to requiring that the victim be "severely injured and . . . caused to suffer permanent and significant physical impairment."

Principles of statutory construction mandate that we "give effect to the legislative intent." Scott v. Commonwealth, 14 Va. App. 294, 296, 416 S.E.2d 47, 48 (1992). While penal statutes must be strictly construed against the Commonwealth, "[t]he plain, obvious, and rational meaning of a statute is always preferred to any curious, narrow or strained construction; a statute should never be construed so that it leads to absurd results." Branch v. Commonwealth, 14 Va. App. 836, 839, 419 S.E.2d 422, 424 (1992).

"Where possible, a statute should be construed with a view

toward harmonizing it with other statutes." Morris v. Morris, 4 Va. App. 539, 543, 359 S.E.2d 104, 107 (1987). "Because the Code of Virginia is one body of law, other Code sections using the same phraseology may be consulted in determining the meaning of a statute." Branch, 14 Va. App. at 839, 419 S.E.2d at 425. This Court, in interpreting the prior aggravated malicious wounding statute, looked to the Workers' Compensation Act, Code § 65.2-503, to determine the meaning of "totally disabled," because the Act used a similar phrase. See Branch, 14 Va. App. at 839-40, 419 S.E.2d at 425.

Title 51.5 of the Code, entitled, "Persons With Disabilities," defines "physical impairment" as "any physical condition, anatomic loss, or cosmetic disfigurement which is caused by bodily injury, birth defect, or illness." Code § 51.5-3 (emphasis added). When the legislature amended Code § 18.2-51.2, it is presumed to have known the definition of "physical impairment" found in Code § 51.5-3. Thus, it must have intended that the term would be given the same meaning in Code § 18.2-51.2. See Branch, 14 Va. App. at 840, 419 S.E.2d at 425.

Bryant unquestionably suffered cosmetic disfigurement caused by bodily injury.

The record, moreover, supports the fact finder's determination that Bryant's physical impairment was "permanent and significant." One of the wounds to his face required ten to twenty stitches. At trial, five months after the attack, the scar from that facial wound was still "obvious and visible," even though Bryant had grown a beard. The scar resulting from the cut

to the ear also was still visible.[1]  The trial court reasonably could have found from the number of wounds, the need for stitches for some of them, and the resulting scars, still visible after five months, that Bryant's injuries constituted "permanent and significant physical impairment."

For these reasons, we affirm appellant's conviction for aggravated malicious wounding.

<u>Affirmed.</u>

---

[1]At trial, appellant conceded that "[p]resumably the scars would be permanent unless Mr. Bryant were to have a plastic surgery, . . . . "