485 S.E.2d 669

**Carson Ray SHENK**

v.

**COMMONWEALTH of Virginia.**

**No. 1165–96–4.**

Court of Appeals of Virginia,
Alexandria.

June 3, 1997.

Rehearing En Banc Granted July 8, 1997.

Christian J. Griffin, Assistant Public Defender, for appellant.

Monica S. McElyea, Assistant Attorney General (James S. Gilmore, III, Attorney General, on brief), for appellee.

Present: BENTON and ANNUNZIATA, JJ., and DUFF, Senior Judge.

DUFF, Senior Judge.

Carson Ray Shenk (appellant) was convicted of a second offense of driving after having been adjudicated an habitual offender. He alleges on appeal that the trial court erred in refusing to apply the habitual offender statute's "agricultural purposes" exemption to his operation of a tractor to his home from a residence where he previously had mowed the lawn. We disagree and affirm the conviction.

## I.

On August 29, 1995, Town of Front Royal Police Sergeant R.E. Bukva received a report that appellant was operating a lawn tractor on the streets. Bukva knew that appellant was an habitual offender. Bukva first saw appellant standing in the yard of a single family dwelling at the corner of Brown

Avenue and Cherrydale Avenue in Front Royal. The officer saw a lawn tractor, hooked to a small wagon, parked in front of the residence. Bukva parked his car where he could watch appellant. Within minutes, appellant began to drive the tractor on the street.

Bukva saw appellant make a u-turn with the tractor on Brown Avenue, then drive to Cherrydale Avenue. The officer drove to appellant's house on Duncan Avenue and saw appellant drive the tractor through his yard, toward the street. When appellant saw Bukva, he put the tractor out of gear, jumped off the tractor, and ran. The officer could not see where appellant ran. When Bukva and another officer knocked on the door to appellant's house, no one answered. Bukva testified that appellant drove the tractor 300 to 400 yards.

Bukva testified that the area where appellant drove the tractor is residential, containing single and multi-family dwellings. Bukva testified that the area contains no farms, and he did not see even a garden at appellant's residence.

The Commonwealth introduced records which established that appellant had been adjudicated an habitual offender and previously had been convicted of driving after having been so adjudicated. Dean Reynolds testified on behalf of appellant that appellant had mowed Reynolds' lawn the day before and had returned on August 29 to retrieve the lawn mower.

At appellant's bench trial, the trial judge found that appellant drove a tractor on the public highway, that he had been adjudicated an habitual offender, and that he previously had been convicted for violating that order of adjudication. The judge also found that appellant was not moving the tractor from one tract of land used for agricultural purposes to another tract of land used for agricultural purposes. He noted, "According to the Statute, it is not the nature of the activity at the time but the nature of the use of the land at the time. What the land is commonly used for." The judge refused to apply the statutory exemption.

## II.

Code § 46.2–357 provides that it is unlawful for one who has been adjudicated an habitual offender to drive a motor vehicle or self-propelled machinery or equipment on the highways during the pendency of the revocation of his driving privilege. The statute also provides the following exemption:

> However, the revocation determination shall not prohibit the person from operating any farm tractor on the highways when it is necessary to move the tractor from one tract of land used for agricultural purposes to another tract of land used for agricultural purposes, provided that the distance between the said tracts of land is no more than five miles.

The parties do not dispute that appellant was operating a "farm tractor," within the meaning of the statute.[1] Nor do they contest that appellant operated the vehicle for less than five miles. Rather, the sole issue before this Court is whether appellant was moving the tractor from "one tract of land used for agricultural purposes to another tract of land used for agricultural purposes."

In *Newton v. Commonwealth*, 21 Va.App. 86, 462 S.E.2d 117 (1995), we held:

> Principles of statutory construction mandate that we "give effect to the legislative intent." While penal statutes must be strictly construed against the Commonwealth, "[t]he plain, obvious, and rational meaning of a statute is always preferred to any curious, narrow or strained construction; a statute should never be construed so that it leads to absurd results."

*Id.* at 89, 462 S.E.2d at 119 (citations omitted). *Accord Seke v. Commonwealth*, 24 Va.App. 318, 322, 482 S.E.2d 88, 90 (1997). While the legislature did not define the term "agricultural

---

1. Code § 46.2–100 defines "farm tractor" as "every motor vehicle designed and used as a farm, agricultural, or horticultural implement for drawing plows, mowing machines, and other farm, agricultural, or horticultural machinery and implements including self-propelled mowers designed and used for mowing lawns."

purposes" in Title 46.2, we may look to other provisions of the Code for assistance in defining the term. *See Branch v. Commonwealth,* 14 Va.App. 836, 839, 419 S.E.2d 422, 425 (1992) ("[b]ecause the Code of Virginia is one body of law, other Code sections using the same phraseology may be consulted in determining the meaning of a statute").

Code § 13.1–313, concerning Agricultural Cooperative Associations, defines "agricultural products" as "livestock and livestock products, dairy products, poultry and poultry products, seeds, nuts, ground stock, horticultural, floricultural, viticultural, forestry, bee and any and all kinds of farm products." Code § 18.2–121.2, which is entitled, "Trespass by spotlight on agricultural land," prohibits the willful use of a spotlight or similar apparatus to "cast a light upon private property used for livestock or crops." Moreover, according to *Black's Law Dictionary* 68 (6th ed.1990), "agricultural" pertains to land where farming is the "leading pursuit."

### III.

The evidence in this case established that appellant drove the tractor in a residential area of the Town of Front Royal. Sergeant Bukva described the area as consisting of single and multi-family dwellings. He stated that there were no farms in the area. The trial judge rejected appellant's argument that his operation of the tractor fell within the statutory exemption. The judge found that the tracts of land from which, and to which, appellant drove the tractor, were not used for agricultural purposes. The evidence supports this finding. Under the circumstances of this case, the judge did not err.

Accordingly, we affirm the conviction.

*Affirmed.*

BENTON, Judge, dissenting.

Because the evidence proved that Carson Shenk drove a vehicle that met the definition of "farm tractor," *see* Code §§ 46.2–100 and 46.2–357, from a yard where it had been used

to his home, which also contained a yard, I would reverse the felony conviction.

In pertinent part, Code § 46.2-357(A) provides as follows: It shall be unlawful for any person to drive any motor vehicle or self-propelled machinery or equipment on the highways of the Commonwealth while the revocation of the person's driving privilege remains in effect. However, *the revocation* determination *shall not prohibit the person from operating any farm tractor* on the highways when it is necessary to move the tractor *from one tract of land used for agricultural purposes to another tract of land used for agricultural purposes,* provided that the distance between the said tracts of land is no more than five miles.

*Id.* (emphasis added). The statutory definition of farm tractor "includ[es] self-propelled mowers designed and used for mowing lawns." Code § 46.2-100.

The Commonwealth agrees that Shenk was driving a "farm tractor" and that the distance between Shenk's lawn and the lawn he mowed, approximately 400 yards, was less than the statutory limit of five miles. *See* Code § 46.2-357. Thus, the sole issue is whether the tracts of land Shenk travelled between were being used for "agricultural purposes."

"The ultimate purpose of all rules of construction is to ascertain the intention of the legislature, which, absent constitutional infirmity, must always prevail. All rules are subservient to that intent." *Board of Supervisors v. King Land Corp.,* 238 Va. 97, 103, 380 S.E.2d 895, 897 (1989). Furthermore, when we apply a penal statute, we must strictly construe the statute " 'against the Commonwealth and in favor of the citizen's liberty.' " *Stevenson v. City of Falls Church,* 243 Va. 434, 436, 416 S.E.2d 435, 437 (1992) (citation omitted).

In creating the exemption in Code § 46.2-357 for a person "operating any farm tractor," the legislature intended to allow the person to drive the farm tractor on the highway from one tract of land used for agricultural purposes to another. Because the legislature included within its definition of farm tractor "self-propelled mowers designed and used for mowing

lawns," Code § 46.2–100, the legislature clearly intended that a person such as Shenk could move his self-propelled mower from one lawn to another lawn. Thus, construing "agricultural purposes" to include growing grass on a lawn is consistent with the General Assembly's express intent to exempt the operation of self-propelled lawn mowers from the prohibition.

The majority asserts that the legislature did not define "agricultural purposes," searches other titles of the Code for guidance, and settles upon a narrow definition that relates only to "farms." In so doing, the majority ignores the General Assembly's intent and improperly construes the criminal statute. The General Assembly manifestly intended to exempt the operation of lawn mowers from its prohibition. The manner in which the General Assembly defined "farm tractor" is itself an ample and demonstrative indication that the legislature was cognizant of the broad meaning of "agricultural purposes," Code § 46.2–357(A), and intended to give the statute that broad meaning.

Moreover, the plain meaning of the term "agriculture" compels a conclusion that growing grass is an agricultural purpose. Agriculture is "the science or art of cultivating the soil." *Webster's Third New International Dictionary* 44 (1981). Thus, the ordinary usage of the term "agriculture" encompasses activities surrounding the growing of anything in the soil. The growing and cultivating of grass is, therefore, an "agricultural purpose[ ]." Code § 46.2–357(A). ·

The evidence proved that Shenk had cut his neighbor's lawn with his mower and was returning to his own lawn driving the mower. This evidence proved that Shenk was operating the "farm tractor" consistent with the exception provided by Code § 46.2–357. I would hold that the evidence failed to prove beyond a reasonable doubt that Shenk violated Code § 46.2–357; therefore, I would reverse the conviction and set aside the one year prison sentence.

I dissent.

## UPON A PETITION FOR REHEARING EN BANC BEFORE THE FULL COURT

On June 17, 1997, came the appellant, by court-appointed counsel, and filed a petition praying that the Court set aside the judgment rendered herein on June 3, 1997, and grant a rehearing en banc thereof.

On consideration whereof, the petition for rehearing en banc is granted, the mandate entered herein on June 3, 1997 is stayed pending the decision of the Court en banc, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35. It is further ordered that the appellant shall file with the clerk of this Court ten additional copies of the appendix previously filed in this case.