COURT OF APPEALS OF VIRGINIA

Present: Judges Alston, McCullough and Senior Judge Annunziata
Argued at Alexandria, Virginia

UNPUBLISHED

WILLIAM L. BALLARD

MEMORANDUM OPINION[*] BY
JUDGE ROSSIE D. ALSTON, JR.
MAY 20, 2014

v.      Record No. 0304-13-4

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF CULPEPER COUNTY
Susan L. Whitlock, Judge

Charles E. Haden for appellant.

Elizabeth C. Kiernan, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.

William L. Ballard (appellant) appeals his conviction of aggravated malicious wounding,

in violation of Code § 18.2-51.2. On appeal, appellant contends that "[t]he trial court erred in

refusing to reduce the aggravated [malicious wounding] charge . . . to ordinary [malicious

wounding] . . . where the Commonwealth presented no medical evidence and there was a failure

to prove 'permanent and significant physical impairment.'" Finding no error, we affirm

appellant's conviction.

I. Background[1]

When reviewing a challenge to the sufficiency of the evidence to support a conviction,

this Court views the evidence in the light most favorable to the Commonwealth as the prevailing

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] As the parties are fully conversant with the record in this case and because this
memorandum opinion carries no precedential value, this opinion recites only those facts and
incidents of the proceedings as are necessary to the parties' understanding of the disposition of this
appeal.

party below, granting to it all reasonable inferences drawn from that evidence.  See Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997).

So viewed, the evidence at trial proved that David Cornett was a teacher of building maintenance at the Culpeper Juvenile Correctional Facility and was in his classroom on March 7, 2012.  On that day, Cornett walked amongst the twelve students in his classroom, stopping at one point to answer questions appellant had regarding a plumbing fixture.  Later, at the end of the class period, when Cornett began "gathering up the tools from different" students, appellant approached Cornett, and, using a "three or four pound" metal bathroom spigot, struck Cornett above his right temple.  The blow was unexpected and caught Cornett off guard, but he remained standing.  Appellant struck Cornett a second time, hitting Cornett in the same place as the first strike.  Cornett managed to radio for help before collapsing to the floor.

Officer Brennan responded soon after the incident and observed Cornett as Cornett was leaving the correctional facility with emergency medical services.  Officer Brennan described Cornett as appearing "very lethargic" and making slow, "cautionary" movements.

Cornett was taken directly to the hospital, where he received six stitches near his right temple.  Cornett was released from the hospital later that day.  Two days later, Cornett returned to the hospital's emergency room complaining of "extreme headaches" and neck pain.

Eight months after the incident, Cornett testified at appellant's trial that he still had a scar above his right eye.  Cornett also described significant symptoms and physical limitations that he began experiencing after the attack.  Cornett testified that he currently suffers from headaches and experiences sensitivity to light.  He has also experienced cognitive difficulties; he testified that he has difficulty concentrating, multi-tasking, and recalling words.  Cornett has even experienced changes to his gait that have made walking difficult.  As a result of his injuries, Cornett undergoes medical treatment with two doctors approximately every two weeks.  Cornett

can no longer drive, and he is also no longer employed at the Culpeper Juvenile Correctional Facility.

Following the Commonwealth's case-in-chief, appellant made a motion to strike the charge of aggravated malicious wounding. Appellant argued that the Commonwealth had not proven that Cornett's injuries would "continue into the future," as required by Code § 18.2-51.2, which defines as aggravated malicious wounding any malicious wounding where the victim is "severely injured and is caused to suffer permanent and significant physical impairment." The trial court denied appellant's motion to strike, noting that "a significant period for healing" had elapsed since the incident, yet Cornett still had a visible scar and experienced significant ongoing impairments.[2] Thus, the trial court concluded that the Commonwealth presented "substantial and credible testimony that [Cornett] has significant impairment and that that impairment is permanent."

The trial court found appellant guilty of aggravated malicious wounding and sentenced appellant to fifty years' imprisonment, with twenty-two years suspended. This appeal followed.

II. Analysis

A. Standard of Review

When the sufficiency of the evidence is challenged on appeal, we "'review the evidence in the light most favorable to the party prevailing at trial and consider any reasonable inferences from proven facts.'" Calloway v. Commonwealth, 62 Va. App. 253, 261, 746 S.E.2d 72, 76 (2013) (quoting Towler v. Commonwealth, 59 Va. App. 284, 290, 718 S.E.2d 463, 467 (2011)). A reviewing court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1970). Rather, we

---

[2] Interestingly, the trial court noted that its finding would be different if it was dealing "only with the scar," but the trial court added that it had "substantial and credible testimony that [Cornett] has significant impairment and that that impairment is permanent." We offer no opinion on the trial court's representations in this regard.

ask only whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. "'The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.'" Montague v. Commonwealth, 40 Va. App. 430, 435, 579 S.E.2d 667, 669 (2003) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

### B. Sufficiency

Appellant argues on appeal, as he did at trial, that

> Cornett's mere report of ongoing symptoms at the time of trial did not constitute proof that he had suffered a "permanent and significant physical impairment" within the meaning of [Code § 18.2-51.2]. To the contrary, [appellant contends] there was no proof whatsoever that Cornett's injury had caused a permanent and significant physical impairment, and thus the trier of fact had no reasonable basis for inferring that the symptoms were permanent.

For the following reasons, we disagree.

We have held in numerous cases that "the Commonwealth need not present definitive testimony that a victim's injuries will never improve" in order to establish that an injury is permanent, but may instead "leave it to the common sense of the jury to determine if the injuries are permanent." Lamm v. Commonwealth, 55 Va. App. 637, 644-45, 688 S.E.2d 295, 298-99 (2010). Adhereing to this standard, and in reliance on the common sense determination of the jury, we also have affirmed convictions of aggravated malicious wounding even in the absence of expert medical evidence in the record. So long as a rational fact finder can reasonably conclude from the victim's testimony and the physical evidence that the victim's injuries are significant and permanent, the evidence is sufficient to support a conviction of aggravated malicious wounding. See Martinez v. Commonwealth, 42 Va. App. 9, 25, 590 S.E.2d 57, 64 (2003); Newton v. Commonwealth, 21 Va. App. 86, 90, 462 S.E.2d 117, 119 (1995).

- 4 -

Our decision in Newton is instructive.  There, the appellant used a box cutter to repeatedly cut the victim.  Newton, 21 Va. App. at 88, 462 S.E.2d at 118.  "One of the wounds to [the victim's] face required ten to twenty stitches.  At trial, five months after the attack, the scar from that facial wound was still 'obvious and visible,' even though [the victim] had grown a beard."  Id. at 90, 462 S.E.2d at 119.  Another scar on the victim's ear was also visible.  Id.  Considering the "number of wounds, the need for stitches for some of them, and the resulting scars, still visible after five months," we upheld the trial court's determination that the victim's injuries constituted "permanent and significant physical impairment."  Id.

We applied a similar analysis in Martinez.  Martinez shot his victim in her left shoulder.  42 Va. App. at 24, 590 S.E.2d at 64.  The bullet lodged near the victim's spine and had to be surgically removed.  Id.  At Martinez's trial two years after the incident, the victim "showed her scars to the jury" and testified that she "still had not regained full use of her left arm and hand."  Id. at 25, 590 S.E.2d at 64.  While the victim testified that she experienced some improvement after her surgery, she explained that she still experienced difficulty gripping with her left hand and "could not pick up money or change and could not button her clothes."  Id.  Martinez argued that the evidence was insufficient to prove that the victim's injuries were "severe, causing her 'to suffer permanent and significant physical impairment."  Id. at 24, 590 S.E.2d at 64.  Martinez further asserted that "no expert testimony 'described the nature of [the victim's] wounds, the prognosis for recovery or whether the injuries were permanent and significant.'"  Id.  We rejected Martinez's argument, holding that the jury could reasonably conclude from the victim's testimony and the physical evidence adduced at trial that the victim suffered a permanent and significant physical impairment as a result of the shooting.  Id. at 25, 590 S.E.2d at 64.

Viewed in the light most favorable to the Commonwealth, the record amply supports the trial court's determination that Cornett's physical impairment is "permanent and significant."

Cornett was twice struck on the side of his head with a heavy metal object. The force of the strikes caused Cornett to collapse to the floor, and he received six stitches to close a cut above his right eye. At trial, eight months after the attack, the scarring above Cornett's eye was still visible. See Lamm, 55 Va. App. at 645, 688 S.E.2d at 299 (stating that the opportunity to observe the victim during testimony provided "additional evidence to consider in determining whether the victim was permanently and significantly injured").[3] Cornett's injuries manifested in other, more profound, ways as well. Cornett testified that since the attack he has experienced persistent headaches, sensitivity to light, difficulty walking, and cognitive deficiencies – including difficulty concentrating, multi-tasking, and recalling words. Cornett explained that as a result of his injuries he is no longer capable of driving and that he is no longer employed with the Culpeper Juvenile Correctional Facility. At the time of appellant's trial, Cornett was receiving bi-weekly medical treatment from two doctors.

After observing the still visible scar above Cornett's eye and hearing Cornett testify about his enduring injuries, the trial court determined that the physical impairment Cornett suffered at the hands of appellant was permanent and significant. A rational fact finder could make the same conclusion based on the evidence presented. We therefore affirm appellant's conviction.

Affirmed.

---

[3] Considering the nature of Cornett's symptoms, particularly his altered gait and cognitive deficits, the trial court was well-situated to observe the severity of his impairments. In fact, appellant's attorney even conceded that Cornett "exhibit[ed] some problems" at trial.