COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges O'Brien, Ortiz and Raphael
Argued at Richmond, Virginia

LORENZO DONTE REYNOLDS

v.        Record No. 0264-22-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE STUART A. RAPHAEL
MARCH 14, 2023

FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
William E. Glover, Judge

John D. Mayoras for appellant.

Matthew J. Beyrau, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Lorenzo Donte Reynolds was convicted of strangulation and aggravated malicious

wounding after the trial court found that he strangled his girlfriend and bit off her lip. The

victim's lip was surgically reattached. Contesting the strangulation conviction, Reynolds argues

that the victim could still breathe when he gripped her neck. He also claims that the aggravated-

malicious-wounding conviction should be set aside on the ground that the prosecution failed to

prove that the victim suffered a permanent impairment or that he intended to maliciously wound

her. Finding those arguments meritless, we affirm.

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing

party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting

*Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard" the

---

* This opinion is not designated for publication. *See* Code § 17.1-413.

defendant's evidence when it conflicts with the Commonwealth's evidence, "regard as true all the credible evidence favorable to the Commonwealth," and read "all fair inferences" in the Commonwealth's favor. *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

In 2019, Reynolds shared a house and a bedroom with his girlfriend, L.J. His girlfriend's son also lived in the residence, as did another adult couple—S.S. and M.B.—and their three children.

*The October 2019 incident*

On the evening of October 28, 2019, Reynolds put his hands around L.J.'s neck as he held her down on the bed in their bedroom. L.J. testified that she felt the pressure from his grip and could "[b]arely" breathe. L.J. threw her weight against him to break away, but Reynolds bit the back of her arm as she escaped. L.J. ran outside and locked herself in her car, with Reynolds in pursuit. Reynolds kicked in her driver's-side window, flinging shattered glass on her face and body. L.J. tried to run from the car, but Reynolds grabbed her, picked her up, and "body slammed" her to the driveway. He held her down with his knee and pressed on her chest with his arm, preventing her from breathing or speaking. After S.S. yelled at Reynolds to stop and someone else pulled him off, Reynolds fled.

Although L.J. did not initially report the attack to police, she sought treatment at the hospital. Physicians removed the glass from her face, neck, and body. And because she demonstrated trauma from being choked, including bruising to her neck and in her eyes, L.J. underwent a full-body scan as well as a CAT scan of her head.

Reynolds then moved his belongings out of the house. L.J. testified that their relationship afterward was "on and off." He would be "here a couple days, gone a couple days, here a couple days, gone a couple days."

- 2 -

*The December 2020 incident*

L.J. was not expecting to see Reynolds on the evening of December 10, 2020.  After L.J. had repeatedly ignored his calls, Reynolds phoned M.B., telling him to warn L.J. that she had "better answer his phone calls," but L.J. said she did not want to speak with him and wanted to be left alone.  Reynolds showed up at the house uninvited, pushing past M.B. to go inside.  L.J. had just finished cooking dinner when Reynolds came at her, yelling and "smack[ing]" the phone out of her hand.

Reynolds then lunged for her face, biting off nearly half of her upper lip.  L.J. testified, "all I see is blood."  Her severed lip fell to the floor.  Reynolds then grabbed L.J., put her in a headlock, and tried to drag her from the house, saying he was trying to get her help.  L.J. begged her housemates not to let him take her.  S.S. was on the phone with L.J.'s father at the time.  After Reynolds overheard L.J.'s father say he was calling 911, Reynolds let go of her.  Reynolds insisted that he "didn't do anything."  He wanted to go to the hospital with L.J., but she refused to let him come.  Reynolds left the house before police arrived.

M.B. found L.J.'s severed lip on the living-room floor.  He rushed it to the hospital, where surgeons successfully reattached it.

At Reynolds's bench trial one year later—in December 2021—the Commonwealth introduced the testimony described above.  The Commonwealth also introduced contemporaneous photographs of the marks on L.J.'s arm, neck, and face from the October 2019 incident, and the wound to her lip from the December 2020 incident.  A scar and a healing bite mark were still visible on the left side of L.J.'s mouth.  Her lip still showed an imprint of Reynolds's teeth.  L.J. also testified that she continued to suffer pain and that her wound was still healing.

After the trial court denied his motion to strike the strangulation and aggravated-malicious-wounding charges, Reynolds testified in his own defense.[1] He claimed that the October 2019 incident began when L.J. yelled at him to pack his things and leave; he said that she twice punched him in the face with a closed fist. He told her not to hit him and "brush[ed] against" her as he walked past, at which point she raised her hand to hit him again. Reynolds said he "poked her" in the "forehead three times" to get her to stop; he claims she reacted by screaming, grabbing a knife and scissors, and attacking him. In his telling, the pair fell onto the bed, with L.J. on top. Reynolds then flipped her onto her back and grabbed the knife to keep her from stabbing him. He denied striking her, grabbing her neck, or biting her arm. He also denied putting his arm on her chest when she was on the ground.

As for the December 2020 incident, Reynolds said that M.B. let him come inside the house. He denied knocking the phone from L.J.'s hand. He explained her severed lip by claiming that their heads collided as they were standing "nose-to-nose," yelling at each other. Reynolds did not "feel anything as far as a bite." He said he tried to help L.J. by offering to take her to the hospital, but she told him to leave.

Reynolds admitted to nine previous felony convictions. He also acknowledged three prior misdemeanor convictions involving lying, cheating, or stealing.

After denying Reynolds's renewed motion to strike, the trial court found him guilty of strangulation and aggravated malicious wounding.[2] The court found that L.J.'s testimony was credible, but Reynolds's was not. L.J. testified "as best she could to what she recall[ed] happening" and had not been "effective[ly] impeach[ed]." Her testimony aligned with that of the

---

[1] The trial court granted Reynolds's motion to strike the statutory-burglary charge in connection with the December 2020 incident.

[2] The trial court also convicted Reynolds of assault and battery of a family member.

other witnesses. Reynolds's criminal record, by contrast, was "just the beginning" of his credibility problems. His account was "inconsistent with logic," "inconsistent with the other testimony," and "inconsistent with common sense."

Reynolds was sentenced to five years' incarceration with one year suspended for strangulation (Code § 18.2-51.6), and twenty years with five years suspended for aggravated malicious wounding (Code § 18.2-51.2).[3] Reynolds noted a timely appeal.

ANALYSIS

When the appellant challenges the sufficiency of the evidence supporting his conviction, "[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it." *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (alteration in original) (quoting *Perkins*, 295 Va. at 327). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

---

[3] Reynolds does not challenge his conviction for assault and battery of a family member, for which he was sentenced to twelve months in jail with two months suspended. The court ordered the sentences on all three convictions to run consecutively.

A.  *The evidence sufficed to prove strangulation (Assignment of Error 1).*

A person commits strangulation, a Class 6 felony, if "without consent, [he] impedes the blood circulation or respiration of another person by knowingly, intentionally, and unlawfully applying pressure to the neck of such person resulting in the wounding or bodily injury of such person."  Code § 18.2-51.6.  The trial court based the strangulation conviction on the October 2019 incident in which Reynolds held L.J. by the neck, not when he later threw her to the ground and pressed his arm to her chest.  Reynolds claims that his holding L.J.'s neck was not strangulation because she could still breathe, even if only "[b]arely."[4]

The statutory phrase "impedes the blood circulation or respiration of another person" does not require that the victim's blood flow or breathing be completely stopped.  We recently construed the term "impedes" in this statute according to its dictionary definition—"to interfere with or get in the way of the progress of," or "to 'hold up,' 'block,' and 'detract from.'"  *Dodge v. Commonwealth*, No. 0577-21-2, slip op. at 5, 2022 WL 516904, at *3 (Va. Ct. App. Feb. 22, 2022) (quoting *Webster's Third New International Dictionary* 1132 (2002)).[5]  Thus, "the statute does not require the Commonwealth to prove that the victim's ability to breathe or speak was completely restricted.  Rather, . . . the evidence must show that appellant's actions merely interfered with her ability to breathe or obstructed her breathing."  *Id.*

The trial court did not err in finding that standard satisfied here.  L.J. testified that Reynolds "had his hands around [her] neck" as she was laying on the bed, his body on top of hers.  When he applied "pressure" to her neck, she could "[b]arely" breathe.  And after that

---

[4] Reynolds does not dispute that his actions resulted in "bodily injury" to L.J. or that he held her by the neck "without consent."

[5] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value.  Rule 5A:1(f)."  *Otey v. Commonwealth*, 61 Va. App. 346, 350 n.3 (2012).  Both sides here have relied on *Dodge*.

incident, she received a full body scan and a CAT scan of her head because she exhibited signs of trauma from being choked, including bruising around her neck and in her eyes. Because a reasonable factfinder could conclude from that evidence that Reynolds's gripping L.J. by the neck interfered with or obstructed her ability to breathe, the trial court's strangulation finding was not "plainly wrong or without evidence to support it." *Smith*, 296 Va. at 460.

    B. *The evidence sufficed to prove aggravated malicious wounding*
       *(Assignment of Error 2).*

Reynolds next argues that the trial court should have set aside his aggravated-malicious-wounding conviction for the December 2020 incident. Code § 18.2-51.2(A) defines this offense as follows:

> If any person maliciously shoots, stabs, cuts or wounds any other person, or by any means causes bodily injury, with the intent to maim, disfigure, disable or kill, he shall be guilty of a Class 2 felony if the victim is thereby severely injured and is caused to suffer permanent and significant physical impairment.

Reynolds notes that he did not use a knife, gun, or weapon, but he does not dispute that using one's teeth to bite off another person's lip qualifies as "wound[ing]," or "by any means caus[ing] bodily injury" to another person. Code § 18.2-51.2(A). He also does not dispute that L.J. sustained a "significant physical impairment." But Reynolds argues that L.P.'s severed-lip injury was not "permanent" and that he lacked the requisite intent to maliciously wound her.

"To prove an injury is permanent, the Commonwealth need not present definitive testimony that a victim's injuries will never improve, but instead can leave it to the common sense of the [factfinder] to determine if the injuries are permanent." *Lamm v. Commonwealth*, 55 Va. App. 637, 644-45 (2010). For example, in *Newton v. Commonwealth*, 21 Va. App. 86 (1995), we found sufficient evidence of a "permanent" injury from a razor-blade attack when the victim's facial scar was "obvious and visible" just "five months after," and a scar on his ear was also still visible. *Id.* at 90. We said that "[t]he trial court reasonably could have found from the

number of wounds, the need for stitches for some of them, and the resulting scars, still visible after five months, that [the victim]'s injuries constituted 'permanent and significant physical impairment.'" *Id.* Similarly, in *Martinez v. Commonwealth*, 42 Va. App. 9 (2003), we affirmed a conviction for aggravated malicious wounding when the victim "still had not regained full use of her left arm and hand," two years after the defendant shot her. *Id.* at 25.

There was also enough evidence here from which a reasonable trier of fact could find that L.J.'s injury was permanent. The trial took place a year after Reynolds bit off her lip. Although the lip was surgically reattached, L.J.'s mouth still showed a scar and a "healing bite mark." Also visible was the "imprint of his teeth on [her] lip." And L.J. testified that she still suffered pain from the injury. So as in *Newton* and *Martinez*, the evidence sufficed for the trial court to find that L.J.'s injury was permanent.

Finally, we reject Reynolds's claim that the Commonwealth failed to prove that he acted with malicious intent. "Whether or not an accused acted with malice is generally a question of fact and may be proved by circumstantial evidence." *Palmer v. Commonwealth*, 71 Va. App. 225, 237 (2019) (quoting *Canipe v. Commonwealth*, 25 Va. App. 629, 642 (1997)). "[M]alice may be either express or implied by conduct." *Watson-Scott v. Commonwealth*, 298 Va. 251, 256 (2019) (quoting *Essex v. Commonwealth*, 228 Va. 273, 280 (1984)). "Indeed, '[m]alice is implied by law from any deliberate, willful, and cruel act against another, however sudden.'" *Witherow v. Commonwealth*, 65 Va. App. 557, 566 (2015) (alteration in original) (quoting *Epperly v. Commonwealth*, 224 Va. 214, 231 (1982)).

There was enough evidence here from which the factfinder could conclude that Reynolds acted maliciously, with the intent to maim, disfigure, or disable L.J. He was angry with her and warned M.B. to tell her that she had "better answer" his calls. The record supports the trial court's finding that Reynolds went to the house "because he want[ed] to have an argument." He

showed up uninvited, brushed past M.B., confronted L.J., and "smacked" the phone from her hand. He uttered a "growl" and then "lunge[d]" at her face, biting off nearly half of her upper lip. The trial court could reasonably infer that Reynolds intended to permanently disfigure her face. Malice could be "implied" from such a "deliberate, willful, and cruel act." *Witherow*, 65 Va. App. at 566 (quoting *Epperly*, 224 Va. at 231); *see also Virginia v. Commonwealth*, 17 Va. App. 684, 688 (1994) (holding that the factfinder could "properly infer" malice because the defendant was "angry at" and "threatened to retaliate against" the victim). And although Reynolds testified that L.J.'s injury was just an accident, "the trial court was at liberty to discount [his] self-serving statements as little more than lying to 'conceal his guilt' and could treat such prevarications as 'affirmative evidence of guilt.'" *Coleman v. Commonwealth*, 52 Va. App. 19, 25 (2008) (first quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 10 (2004); and then quoting *Wright v. West*, 505 U.S. 277, 296 (1992)).

CONCLUSION

The trial court had sufficient evidence to conclude beyond a reasonable doubt that Reynolds strangled L.J. during the October 2019 incident and that he committed aggravated malicious wounding when he bit off her lip during the December 2020 incident.

*Affirmed*.