COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Raphael, White and Senior Judge Petty

NASIM JACKSON

v.      Record No. 0907-22-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*]
PER CURIAM
JUNE 20, 2023

FROM THE CIRCUIT COURT OF THE CITY OF HOPEWELL
W. Edward Tomko, III, Judge

(Mary K. Martin; Mary K. Martin, Attorney at Law, PLLC, on brief),
for appellant.

(Jason S. Miyares, Attorney General; Lucille M. Wall, Assistant
Attorney General, on brief), for appellee.


Following a bench trial, the trial court convicted Nasim Jackson of attempted carjacking,

aggravated malicious wounding, and two counts of using a firearm in the commission of a felony,

second or subsequent offense.[1]  Jackson challenges the sufficiency of the evidence to sustain his

convictions.  After examining the briefs and record in this case, the panel unanimously holds that

oral argument is unnecessary because "the appeal is wholly without merit."  Code

§ 17.1-403(ii)(a); Rule 5A:27(a).  For the following reasons, we affirm the trial court's judgment.

BACKGROUND

On appeal, we review the evidence "in the 'light most favorable' to the Commonwealth,

the prevailing party in the trial court."  *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  Doing so requires us to "discard the

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413.

[1] Jackson does not challenge his related conviction for maliciously shooting into an
occupied vehicle.

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

On July 25, 2019, Virginia State Trooper Lauralyn Rutledge received a radio message from police dispatch advising her to "be on the lookout" for a stolen black sedan that was driving "recklessly." The dispatcher warned that "armed and dangerous suspects" occupied the vehicle. Shortly thereafter, Jackson drove past Trooper Rutledge in a vehicle matching the sedan's description. The trooper followed Jackson and activated the lights and sirens in her patrol car. Jackson then accelerated to 120 miles per hour and began "weaving in and out of traffic." Jackson evaded the trooper by "cut[ting] in front of a tractor trailer" and turning onto an exit ramp, where he abruptly stopped between a white sport utility vehicle ("SUV") and a dark-colored Audi.

The SUV's driver, Army Sergeant Richard Melton, saw Jackson "jump out" of the sedan, run up to the Audi, and pull on the driver's side door handle. The door was locked, so Jackson was unable to enter the Audi. Noticing that Jackson had a firearm, Melton honked his horn to warn the Audi's driver, Janet Lewandowski. When Lewandowski looked around to "process what was going on," she saw Jackson pointing a revolver at her and attempted to drive away. Lewandowski heard a gunshot as she drove away from Jackson; she later discovered a bullet hole in her driver's side door upon reaching her destination. At trial, Lewandowski testified that she did not hear Jackson say anything during the incident, but she "believed" that he had been "trying to get into . . . and take [her] car" because he "had exited one vehicle," approached her car, and immediately began "grabbing on [her] doorhandle."

After Lewandowski escaped, Jackson approached Melton's SUV and shot the driver's side window. The bullet shattered the window and went through Melton's right arm and into the

passenger side door. As Jackson moved "toward[] the doorhandle," Melton "ducked [his] head down" and drove away. Melton parked his SUV at the top of the exit ramp and applied a tourniquet to his wounded arm. He then called for medical assistance and awaited transportation to a hospital.

Seconds later, Prince George Police Department Sergeant Michael Laine arrived at the exit ramp in response to a reported armed carjacking. Sergeant Laine saw Jackson "running toward" another vehicle with "a large revolver in his hand." Jackson stood in front of the vehicle and ordered the driver to stop by holding out his left arm "with the palm extended." As he did so, Sergeant Laine got out of his patrol car with his service weapon drawn and ordered Jackson to the ground; Jackson immediately dropped his revolver and got on the ground.

Following his arrest, Jackson told police that he abandoned the sedan on the exit ramp because it had run out of gas. Jackson admitted that he shot "one man" with his pistol but maintained that he did so because he thought the man was reaching for a weapon.

At trial, Melton testified that the tourniquet he applied to his arm "saved [his] life" because the bullet Jackson fired at him "hit an artery" and caused profuse bleeding.[2] Melton received surgery to repair the ruptured artery and was hospitalized for four days. He testified that he still had shrapnel lodged in his arm, which caused severe nerve damage and visible scarring. Melton could not move his hand for three months and required intensive physical therapy to regain mobility. In addition, Melton's injuries disqualified him from continuing to serve as an Army Ranger because the military determined that he was permanently disabled.

At the conclusion of the Commonwealth's evidence, Jackson moved to strike the charges, arguing that the evidence failed to prove that he specifically intended to "carjack anyone." The

_____

[2] At trial, the Commonwealth introduced several photographs depicting Melton's gunshot wound.

trial court denied Jackson's motion. During closing argument, Jackson again asserted that no evidence established his specific intent to commit carjacking. In addition, Jackson argued that the trial court should reduce the aggravated malicious wounding charge to malicious wounding because no evidence proved that Melton sustained a severe and permanent injury. The trial court refused to do so and convicted Jackson of attempted carjacking, aggravated malicious wounding, and two counts of using a firearm in the commission of a felony, second or subsequent offense. Jackson appeals.

## ANALYSIS

Jackson challenges the sufficiency of the evidence to sustain his convictions. "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Such deference stems, in part, from the trial court's "opportunity to observe the testimony and demeanor of all witnesses." *Lopez v. Commonwealth*, 73 Va. App. 70, 81 (2021). Accordingly, settled principles dictate that "[d]etermining the credibility of witnesses . . . is

within the exclusive province of the [fact finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (second alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). "[T]he conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only when we find that the witness' testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Ragsdale v. Commonwealth*, 38 Va. App. 421, 429 (2002) (quoting *Ashby v. Commonwealth*, 33 Va. App. 540, 548 (2000)). "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Gerald v. Commonwealth*, 295 Va. 469, 487 (2018) (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).

## I.  Attempted Carjacking

Jackson contends that the evidence was insufficient to prove attempted carjacking because no evidence established that he specifically intended to commit that offense. Jackson argues that "[i]n the absence of him communicating an intention to carjack Ms. Lewandowski or some further action such as getting into the vehicle himself or trying to pull Ms. Lewandowski out of the vehicle, the evidence is insufficient to establish his intention." In addition, Jackson asserts that the evidence did not exclude the reasonable hypothesis of innocence that he intended only "to commit the crime of shooting into an occupied vehicle," not carjacking. We disagree.

To prove the completed offense of carjacking,[3] the Commonwealth must prove beyond a reasonable doubt that "the perpetrator intentionally seized, or seized control of, the [victim's]

---

[3] In relevant part, Code § 18.2-58.1(B) defines the crime of carjacking as follows:

> "[C]arjacking" means the intentional seizure or seizure of control of a motor vehicle of another with intent to permanently or temporarily deprive another in possession or control of the vehicle

vehicle, either temporarily or permanently" and "the perpetrator so deprived the victim of possession or control of the vehicle by means of one or more of the specifically prohibited acts— which includes the use of a firearm." *Hilton v. Commonwealth*, 293 Va. 293, 298-99 (2017). Attempted carjacking is composed of two elements: (1) the intent to commit carjacking and (2) "the direct, ineffectual act done toward its commission which must reach far enough toward the accomplishment of the desired result to amount to the commencement of the consummation." *Keyser v. Commonwealth*, 22 Va. App. 747, 750 (1996) (quoting *Howard v. Commonwealth*, 207 Va. 222, 227 (1966)).

"Intent, like any element of a crime, may, and usually must, be proved by circumstantial evidence such as a person's conduct and statements." *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011) (quoting *Long v. Commonwealth*, 8 Va. App. 194, 198 (1989)). We have held that such conduct may include "[t]aking the steps necessary to locate and obtain a weapon." *Morris v. Commonwealth*, 17 Va. App. 575, 578 (1994). Moreover, "the statements and conduct of an accused after the events that constitute the charged crime may also be relevant circumstantial evidence of intent." *Simon*, 58 Va. App. at 206 (quoting *Canipe v. Commonwealth*, 25 Va. App. 629, 645 (1997)).

The record here supports the trial court's finding that Jackson specifically intended to carjack Lewandowski. According to Jackson, he left his car because it ran out of gas. The evidence establishes that while fleeing police, Jackson abandoned his car, armed with a gun, and attempted to open the driver's side door of Lewandowski's car. When he discovered that the door was locked, Jackson aimed his pistol at Lewandowski. Lewandowski, realizing she had

of that possession or control by means of partial strangulation, or suffocation, or by striking or beating, or by other violence to the person, or by assault or otherwise putting a person in fear of serious bodily harm, or by the threat or presenting of firearms, or other deadly weapon or instrumentality whatsoever.

enough room to escape, began to drive away, when Jackson fired his pistol at her car. After Lewandowski escaped, Jackson ran to Melton's SUV, shot him, and began moving toward his doorhandle before Melton drove away. Twice thwarted, Jackson approached yet another vehicle and ordered it to stop just as police arrived and arrested him. From that evidence, a reasonable finder of fact could conclude that Jackson intended to seize Lewandowski's vehicle to replace his disabled sedan and continue his flight from police. *Cf. Hilton*, 293 Va. at 300-01 (holding that the evidence proved carjacking where defendant approached victim's vehicle and demanded his car keys at gunpoint); *see also Keyser*, 22 Va. App. at 750 (holding that the evidence was sufficient to prove attempted carjacking where the defendant never seized control of victim's vehicle but pulled open the door and attempted to force her into the passenger seat).

Jackson's flight from police and repeated attempts to open Lewandowski's driver's side door belie his contention that he intended only to shoot into her vehicle. *See Palmer v. Commonwealth*, 14 Va. App. 346, 348-49 (1992) ("[I]t is today universally conceded that the fact of an accused's flight . . . and related conduct are admissible as evidence of consciousness of guilt, and thus of guilt itself."). Were Jackson's theory correct, he would have simply shot into Lewandowski's vehicle without grabbing the door handle. In addition, that Jackson stopped a third vehicle after failing to prevent Lewandowski's and Melton's escape by shooting at them further supports the conclusion that Jackson sought to commandeer a vehicle to flee from police. On this record, the trial court was entitled to discount Jackson's alternative, self-serving explanations to police for leaving his sedan, arming himself, and shooting at the victims as "[lies] to conceal his guilt." *Shackleford v. Commonwealth*, 262 Va. 196, 209 (2001).

The record supports the trial court's finding that Jackson specifically intended to carjack Lewandowski. Accordingly, the trial court did not err in denying Jackson's motion to strike and convicting him of attempted carjacking.

II. Aggravated Malicious Wounding

Jackson argues that the trial court erred in refusing to reduce the aggravated malicious wounding charge to malicious wounding because the evidence was insufficient to prove that Melton sustained the permanent and significant physical impairment that Code § 18.2-51.2(A) requires. Jackson asserts that although Melton "described the effect of his injuries," that testimony "did not establish a permanent injury." Jackson also argues that because the Commonwealth failed to introduce any "expert testimony or medical records" necessary "to explain the wounds and their impact" on Melton the evidence was insufficient to prove aggravated malicious wounding. We disagree.

"If any person maliciously shoots, stabs, cuts or wounds any other person, or by any means causes bodily injury, with the intent to maim, disfigure, disable or kill," he is guilty of aggravated malicious wounding "if the victim is thereby severely injured and is caused to suffer permanent and significant physical impairment." Code § 18.2-51.2(A). Under that statute, a "physical impairment" is "any physical condition, anatomic loss, or cosmetic disfigurement." *Lamm v. Commonwealth*, 55 Va. App. 637, 644 (2010) (quoting *Newton v. Commonwealth*, 21 Va. App. 86, 90 (1995)). "The word 'permanent' has been defined as 'continuing or enduring (as in the same state, status, place) without fundamental or marked change.'" *Ellis v. Commonwealth*, 70 Va. App. 385, 392 (2019) (quoting *Webster's Third New International Dictionary* 1683 (3d ed. 1993)).

"[T]o prove a physical impairment is permanent under Code § 18.2-51.2, 'the Commonwealth need not present definitive testimony that a victim's injuries will never improve' and that the determination of permanency is left to the 'common sense of the [finder of fact].'" *Id.* (second alteration in original) (quoting *Lamm*, 55 Va. App. at 644). Nor is expert testimony required to prove the significance and permanence of the victim's injuries. *Martinez v.*

*Commonwealth*, 42 Va. App. 9, 25 (2003).  Thus, this Court has held that "permanent and significant" impairments include "visible scars and scars connected to nerve damage."  *Ellis*, 70 Va. App. at 392 (citing *Newton*, 21 Va. App. at 90; *Martinez*, 42 Va. App. at 24-25).  This Court has also found injuries that would be fatal without prompt treatment to be "permanent and significant."  *See Ellis*, 70 Va. App. at 392 (holding evidence sufficient to prove permanent injury where victim "had suffered numerous injuries that would have been fatal if inflicted in isolation").

The record here established that Jackson "severely injured" Melton and caused him to suffer "permanent and significant impairment" by shooting him with a firearm.  Code § 18.2-51.2(A).  At trial, Melton testified that the bullet Jackson fired at him severed an artery in his right arm and Melton would have died from the resulting blood loss if he had not promptly applied a tourniquet to the wound.  *See id.*  Melton's subsequent surgery and extended hospitalization did not relieve lasting nerve damage and visible scarring.  Indeed, Melton testified that he could not move his hand during the first three months of his recovery from surgery; at the time of trial, Melton still had shrapnel in his arm.  Furthermore, Melton was permanently disabled because of his injuries and could no longer serve as an Army Ranger.  Collectively, the evidence was sufficient to prove that Melton's gunshot wound was severe and caused him permanent and significant physical impairment.  *Cf. Newton*, 21 Va. App. at 90 (holding victim suffered permanent and significant physical impairment where defendant cut his cheek with a razor blade and caused visible scarring); *see also Martinez*, 42 Va. App. at 24-25 (finding sufficient evidence of permanent and significant physical impairment where victim suffered scarring and nerve damage from gunshot wound).

The record supports the trial court's conclusion that Melton's gunshot wound permanently and significantly physically impaired him. Accordingly, the trial court did not err in refusing to reduce the aggravated malicious wounding charge to malicious wounding.

### III. The Firearm Convictions

Finally, Jackson contends that the evidence was insufficient to sustain his two convictions for using a firearm in the commission of a felony, second or subsequent offense, because the evidence failed to prove that he committed the predicate felonies. Specifically, Jackson argues that no evidence established that he intended to commit carjacking or caused Melton to suffer permanent and significant physical impairment.

For the above reasons, the evidence was sufficient to prove beyond a reasonable doubt that Jackson both intended to commit carjacking and that he caused Melton to suffer permanent and significant physical impairment. Consequently, Jackson's argument concerning his firearm convictions fails. Accordingly, we affirm his convictions for using a firearm in the commission of a felony, second or subsequent offense.

### CONCLUSION

For the above reasons, we affirm the trial court's judgment.

*Affirmed.*