COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Powell and Alston
Argued at Richmond, Virginia


TRAVIS WAYNE LAMM, A/K/A
  TRAVIS LAMB
                                                            OPINION BY
v.       Record No. 0085-09-2              JUDGE RANDOLPH A. BEALES
                                                        FEBRUARY 9, 2010
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Cheryl V. Higgins, Judge

Christopher C. Graham (Eustis & Graham, PC, on brief), for
appellant.

Kathleen B. Martin, Senior Assistant Attorney General (William C.
Mims, Attorney General, on brief), for appellee.


Travis Wayne Lamm (appellant) was convicted by a jury of aggravated malicious

wounding, pursuant to Code § 18.2-51.2.  He argues on appeal that the trial court erred by denying

his motion for a new trial based on after-discovered evidence.[1]  He claims that, after the trial, the

victim's "permanent and significant physical impairment" disappeared.[2]  We find the trial court did

not err.

---

[1] In his question presented, appellant also suggests that he made a motion to set aside the
verdict pursuant to Rule 3A:15.  However, on brief, he argues only that he is entitled to a new
trial, not to dismissal of his conviction.  Therefore, pursuant to Rule 5A:20(e), we do not
consider this second contention in his question presented.  See Mason v. Commonwealth, 49
Va. App. 39, 46 n.2, 636 S.E.2d 480, 483 n.2 (2006).

[2] Under Code § 18.2-51.2(A),

> [i]f any person maliciously shoots, stabs, cuts or wounds any other
> person, or by any means causes bodily injury, with the intent to
> maim, disfigure, disable or kill, he shall be guilty of a Class 2

# I. BACKGROUND

Appellant's girlfriend, Ms. S.[3], received a call from appellant asking her to pick him up from a bar. When Ms. S. arrived, appellant was "very intoxicated."

Ms. S. first drove to her own house, then she drove appellant to his home. Rather than getting out of the car, appellant told Ms. S. that he wanted to have sexual intercourse with her. Ms. S. refused, and an argument ensued. Appellant then began assaulting Ms. S.

During his assault, appellant attempted to strangle Ms. S. She eventually was able to get out of the car, but appellant caught her and hit her in the back of the head. He then began hitting Ms. S. numerous times in the face. At trial, Ms. S. could not say how many times he hit her because she passed out during the attack. When she came around, Ms. S.'s nose and face were bleeding. She tried to call for help on her cell phone, but appellant grabbed it and broke it.

Ms. S. then told appellant that she needed to go to the hospital. Appellant apparently agreed. He gave his t-shirt to Ms. S. to hold against her nose, and he drove her to the hospital. When they arrived there, appellant parked the car, gave the keys to Ms. S., and walked away.

Ms. S. went into the emergency room, where she received immediate attention. Eventually, Ms. S. had to have her nose reset and had "some metal plates" put in her forehead, according to her surgeon. As a result of appellant's attack, Ms. S. lost her sense of smell and her sense of taste. In addition, a number of her teeth were "numb." Ms. S. testified at trial that she had not regained her sense of taste or smell, and her teeth were still numb.

At trial, Ms. S.'s facial plastic surgeon, Dr. Stephen Park, explained to the jury that appellant broke "bones in her face" around her nose and eye sockets. He characterized it as a "complex

---

felony if the victim is thereby severely injured and is caused to
suffer permanent and significant physical impairment.

[3] We use this designation for the victim rather than her actual name so as to better protect her privacy.

fracture," rather than indicating the number of broken bones in her face, although he identified four areas of her face where the bone was broken. Dr. Park explained that during surgery he had to bring "these broken bones back into alignment, put some metal plates to hold them in position, [and] put some splints inside her nose to re-project it to give it its definition." He described these plates as "permanent" in the sense that they would not dissolve, but "not permanent" in the sense that they could perhaps eventually be removed. There was no evidence that the plates would ever be removed, given that Dr. Park testified that he anticipated no further surgery. Dr. Park also testified that Ms. S. had informed him that "she couldn't smell very well." When asked by the prosecutor if this condition was likely to be permanent, Dr. Park responded, "Unpredictable." He described Ms. S.'s prognosis as "good."

After hearing this evidence, the jury convicted appellant of aggravated malicious wounding and recommended a sentence of twenty years. At the subsequent sentencing hearing before the trial court, the Commonwealth informed the trial court that Ms. S.'s sense of taste and of smell had returned, admitting that this development might justify a reduction in the jury's recommended sentence.[4] Appellant argued that this development was "more than just mitigating," contending that the trial court should grant him a new trial "pursuant to Rule 3A:15."

The Commonwealth called Ms. S. as a witness during this hearing. She testified that she was now "able to taste and smell everything." She also explained that these senses returned after the jury trial, over the course of about a month.

The trial court denied appellant's motion for a new trial and then sentenced appellant to twenty years in prison, with ten years of that sentence suspended. Appellant then appealed his conviction to this Court.

---

[4] This sentencing hearing was finally held almost eleven months after appellant's assault on Ms. S. and over five months after appellant's jury trial.

## II. ANALYSIS

### A. Standard of Review

Rule 3A:15(c) allows a trial court to "grant a new trial if it sets aside the verdict" based on after-discovered evidence. A motion for a new trial based on after-discovered evidence "is a matter submitted to the sound discretion of the circuit court and will be granted only under unusual circumstances after particular care and caution has been given to the evidence presented." Orndorff v. Commonwealth, 271 Va. 486, 501, 628 S.E.2d 344, 352 (2006); see also Odum v. Commonwealth, 225 Va. 123, 130, 301 S.E.2d 145, 149 (1983) ("Motions for new trials based on after-discovered evidence are addressed to the sound discretion of the trial judge, are not looked upon with favor, are considered with special care and caution, and are awarded with great reluctance.").

### B. After-Discovered Evidence

To establish that a trial court should grant a motion for a new trial based on after-discovered evidence, a defendant must prove four things:

1). that the evidence was discovered after the trial;

2). that the evidence could not have been discovered, through the exercise of due diligence, prior to the trial;

3). that the evidence is not merely cumulative, corroborative, or collateral;

4). that the evidence is material to the extent that it is likely to produce different results from a new trial.

See Garnett v. Commonwealth, 275 Va. 397, 416-17, 657 S.E.2d 100, 112, cert. denied, 129 S. Ct. 116 (2008); Orndorff, 271 Va. at 501, 628 S.E.2d at 352; Odum, 225 Va. at 130, 301 S.E.2d at 149. The Virginia courts have used this standard for over 100 years. See, e.g., Thompson v. Commonwealth, 49 Va. (8 Gratt.) 637, 641 (1851) ("[A]fter-discovered evidence

in order to afford proper ground for a new trial, must be such as reasonable diligence on the part of the party offering it, could not have secured at the former trial: must be material in its object, and not merely cumulative and corroborative or collateral; and must be such as ought to be decisive, and productive, on another trial, of an opposite result on the merits.").

Here, the first three prongs were clearly proven by appellant. On appeal, the Commonwealth argues only that the evidence of Ms. S.'s recovery was not material to the extent that the outcome of the trial would have been affected by the return of her sense of smell and of taste. The Commonwealth argues that the plates that remained in Ms. S.'s face would still require that a jury convict appellant of aggravated malicious wounding.

Hines v. Commonwealth, 136 Va. 728, 117 S.E. 843 (1923), Whittington v. Commonwealth, 5 Va. App. 212, 361 S.E.2d 449 (1987), and Gatling v. Commonwealth, 14 Va. App. 60, 414 S.E.2d 862 (1992), are three of the very few cases where our appellate courts have found that a motion for a new trial should have been granted. All of these cases involved evidence that, if believed credible, would clearly have resulted in an acquittal. For example, in Hines, the only evidence linking Hines to the murder of a police officer was a cap found at the scene that several people testified belonged to Hines. 136 Va. at 734, 117 S.E. at 844. After the trial, it was discovered that another man (who owned a similar cap, owned the same caliber gun as the one that killed the officer, did not have an alibi for that night, and was working as a bootlegger like Hines on the night of the murder and near the scene of the murder) had confessed to the murder of the officer and said that Hines was not guilty. Id. at 737, 117 S.E. at 845. The Supreme Court found, "this new evidence, if [the factfinder] had heard *and believed* it, would necessarily have produced a different result." Id. at 750-51, 117 S.E. at 849 (emphasis added).

In Whittington, this Court concluded that, when the after-discovered evidence is a retraction of the testimony of the Commonwealth's key witness -- who was the only other person

there during the commission of the alleged crime -- saying the crime never occurred, the defendant's motion for a retrial should be granted. 5 Va. App. at 216-17, 361 S.E.2d at 452. Similarly, in Gatling, this Court found that a trial court erred in denying a motion for a new trial where the newly discovered evidence indicated that the victim of a rape had told a friend that Gatling did not rape her. 14 Va. App. at 63, 414 S.E.2d at 864.

Here, we are confronted with a situation in which the credibility of after-discovered evidence is unquestioned, unlike in Hines, Whittington, and Gatling (in fact, the Commonwealth concedes it is true), which makes appellant's argument initially appear to be strong for reversal and remand of his case. However, unlike in Hines, Whittington, and Gatling -- where the after-discovered evidence, if believed, would clearly prove the defendants were not guilty -- in the case before this Court, the new evidence would not definitively prove that appellant did not commit aggravated malicious wounding. Here, unlike in Hines, Whittington, and Gatling, the jury had evidence, in addition to the loss of taste and smell, to consider as proof of the "aggravated" element of appellant's conviction, which requires that the injury inflicted in the attack be permanent and significant. Code § 18.2-51.2.

To be convicted of aggravated malicious wounding under Code § 18.2-51.2, the injuries inflicted on the victim must be both a "significant physical impairment" and "permanent." Case law defines "physical impairment" for purposes of this criminal statute as "'any physical condition, anatomic loss, or cosmetic disfigurement.'" Newton v. Commonwealth, 21 Va. App. 86, 90, 462 S.E.2d 117, 119 (1995) (quoting Code § 51.5-3) (emphasis omitted). To prove an injury is permanent, the Commonwealth need not present definitive testimony that a victim's injuries will never improve, but instead can leave it to the common sense of the jury to determine if the injuries are permanent. Martinez v. Commonwealth, 42 Va. App. 9, 23-25, 590 S.E.2d 57, 64 (2003). Though the victim's injuries in the instant case are perhaps not as visible as the

injuries discussed in cases like <u>Cottee v. Commonwealth</u>, 31 Va. App. 546, 556-57, 525 S.E.2d 25, 30-31 (2000), or <u>Newton</u>, 21 Va. App. at 90, 462 S.E.2d at 119, where the records included evidence of the victims' scarring on the day of trial, it would strain credulity here to hold as a matter of law that the insertion of permanent metal plates in Ms. S.'s face does not constitute a permanent physical injury, especially as the evidence proved that those plates remained in Ms. S.'s face at the time of trial and the surgeon said he did not intend to remove them. In addition, the after-discovered evidence that was presented during appellant's sentencing hearing did not indicate that Ms. S.'s numbness in her teeth had stopped. This numbness was before the jury for its consideration as part of the significant and permanent injury done to Ms. S. by appellant. The jury also examined pictures of Ms. S. taken fairly soon after appellant's attack, and they could observe her on the witness stand, which gave them additional evidence to consider in determining whether she was permanently and significantly injured.

We also note that Dr. Park testified before the jury that he could not say if Ms. S.'s loss of smell and taste was permanent. He gave this trial testimony over five months after appellant's attack on Ms. S., when she still had not recovered her sense of smell and of taste. Thus, the jury had evidence before it that her sense of smell and taste might well return. Her eventual recovery of her sense of smell and taste, almost a year after appellant's brutal attack on Ms. S., did not require that the trial court grant appellant's motion for a new trial based on this evidence. The improvement in her taste and smell was foreseeable by the jury, and additional evidence before the jury – independent of her sense of taste and smell – proved that Ms. S. was significantly and permanently injured by appellant's attack even after the return of these senses.

## III.  CONCLUSION

Keeping in mind the steep burden imposed by the standard of review for motions requesting a new trial based on after-discovered evidence, we find the trial court did not err in denying appellant's motion for a new trial based on after-discovered evidence.

<u>Affirmed.</u>