UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:   Judges O'Brien, AtLee and Chaney
Argued at Fredericksburg, Virginia


JEREMIAH LARENZ MOUZON

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1938-22-4                      JUDGE RICHARD Y. ATLEE, JR.
                                                    MARCH 5, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Dontae L. Bugg, Judge

Corinne J. Magee (The Magee Law Firm, on brief), for appellant.

Katherine Quinlan Adelfio, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


A jury convicted Jeremiah Larenz Mouzon of second-degree murder, use of a firearm in the

commission of murder, and aggravated malicious wounding. On appeal, Mouzon challenges the

admissibility of certain evidence and the sufficiency of the evidence to support this aggravated

malicious wounding conviction. Mouzon's evidentiary challenge is procedurally defaulted, and the

evidence was sufficient to prove aggravated malicious wounding. Accordingly, we affirm the trial

court's judgment.

I. BACKGROUND

On appeal, we review the evidence "in the 'light most favorable' to the Commonwealth,

the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

On December 30, 2019, Jayden Quick and his friend, Darien Davis, conspired to steal a firearm from their neighbors' residence. Early that morning, Jayden entered the residence and stole the firearm while Davis kept watch outside. Jayden gave the firearm to Davis and directed him to carry it to Davis's house; meanwhile, Jayden returned inside the residence to speak to some men he had encountered. When the men accused Jayden of stealing the firearm, he called his brother, Kamren, for assistance. Kamren arrived a few minutes later and found Jayden arguing with the men about the missing firearm.

About 20 minutes later, another group of men—including the homeowners and Mouzon—arrived at the residence and confronted Jayden and Kamren about the stolen firearm. They threatened to kill Jayden and demanded to inspect the contents of his and Kamren's cell phones for evidence of the theft. When Jayden tried to retrieve his cell phone, Mouzon shot him and Kamren repeatedly with a firearm before fleeing with his companions.

Soon after, police arrived and found Jayden dead from an apparent gunshot wound to the head. Kamren was bleeding from gunshot wounds in his abdomen and left foot and was unable to move his legs. Kamren was transported to a hospital, where he underwent surgery to remove a bullet that had penetrated his stomach, liver, and intestines. Surgeons removed and then reattached a portion of Kamren's colon to extract the bullet. Another bullet remained lodged in Kamren's foot after the surgery.

The next day, police interviewed Kamren at the hospital, and he identified Mouzon as the shooter. Police subsequently arrested Mouzon for second-degree murder, use of a firearm in the commission of murder, and aggravated malicious wounding.

At Mouzon's trial in April 2022, Kamren and his physician testified about the severity and impact of Kamren's injuries. The physician opined that Kamren probably would have died if he had not received immediate medical attention after the shooting. He also opined that Kamren's prognosis for recovery was "fair," although he might develop post-traumatic stress disorder and permanent internal scarring that could cause Kamren to experience bowel obstructions. Kamren testified that after the shooting, he had been "disabled to the point [he] couldn't work." He also continued to experience medical issues due to the bullet still lodged in his foot. The Commonwealth also introduced photographs showing Kamren's injuries. The photographs, which were taken more than a year after the shooting, demonstrated that Kamren had visible scars from the sutures in his abdomen and his wounded foot.

During its case-in-chief, the Commonwealth sought to introduce text messages Mouzon sent his brother, Samuel Mouzon, the day after the shooting, which stated, "Good news . . . Dude told Feds he didn't know who the hitta is." Mouzon objected, arguing that the texts contained inadmissible "double hearsay." He asserted that the first part of the statement, "Good news," satisfied the hearsay exception for a statement by a party opponent, but he maintained that the second portion of the statement was offered to prove that Kamren could not identify the shooter, and thus was hearsay without an applicable exception. Alternatively, he argued that if the texts were not offered for their truth, then they were not relevant, and the risk of unfair prejudice substantially outweighed their probative value.

The trial court held that the first portion of the statement was admissible as a statement by a party opponent and that the second portion was non-hearsay because it was offered solely to prove Mouzon's consciousness of guilt, not whether it was true that Kamren could not identify the shooter. Accordingly, the trial court admitted the text messages and cautioned the jury "not

- 3 -

to accept" the second portion of the statement, "Dude told Feds he didn't know who the hitta is," for the truth of the matter asserted.

Later, the Commonwealth attempted to introduce expert testimony about the meaning of the term "hitta" used in the challenged text messages. Mouzon objected, arguing that the witness was not qualified to offer an opinion on the subject. Additionally, Mouzon renewed his prior "double hearsay" objection to the text messages. The trial court did not address Mouzon's hearsay argument but held that the witness could not offer an opinion regarding the meaning of "hitta" because that term could be used differently by different people in different contexts.

At the conclusion of the evidence, Mouzon made a motion to strike the aggravated malicious wounding charge, alleging that the evidence failed to prove that Kamren sustained "permanent and significant impairment" from his gunshot injuries. The trial court denied that motion.

While the jury was deliberating, it asked the trial court to clarify its ruling concerning the admissibility of Mouzon's text messages: "Are we to not consider the text itself? Or not consider what the word hitta was?" Given the trial court's previous ruling on his hearsay objection, Mouzon asked the trial court to reiterate its previous cautionary instruction and not to define "hitta" for the jury because doing so would require "speculation." Accordingly, the trial court repeated its admonishment to the jury not to consider the statement, "Dude told Feds he didn't know who the hitta is" for its truth. Ultimately, the jury convicted Mouzon on all charges. Mouzon now appeals.

## II. ANALYSIS

### A. *Admissibility of Texts*

Mouzon argues that his text messages stating, "Good News . . . Dude told Feds he didn't know who the hitta is" were inadmissible because there was no evidence defining the term "hitta"

for the jury, which he asserts rendered the texts irrelevant and unfairly prejudicial. We do not consider his argument because it is not preserved.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. The purpose of this rule "is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015). "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). Thus, appellate courts "will not consider an argument that differs from the specific argument presented to the trial court, even if it relates to the same general issue." *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc).

Mouzon failed to preserve his argument that his text messages were inadmissible unless the term "hitta" was defined for the jury because he did not raise that specific argument in the trial court despite multiple opportunities to do so. Mouzon objected to the admission of the text messages on two alternative grounds. First, he argued that the texts contained inadmissible hearsay within hearsay. Second, he argued that if the statements were not offered for their truth, then they were irrelevant and unfairly prejudicial. But Mouzon did not argue that the texts were irrelevant specifically *because* the Commonwealth did not define the word "hitta." Instead, he argued that it was not relevant because he "d[idn't] see how it shows state of mind" or "how it impeaches."

Mouzon also did not raise that argument when the Commonwealth later attempted to introduce expert testimony regarding the meaning of the term "hitta" or when the jury asked the

trial court to clarify its cautionary instruction.  Rather, Mouzon merely reiterated his previous

hearsay objections and, in fact, asked the trial court not to define "hitta" for the jury.  Thus,

Mouzon's argument on appeal "differs from the specific argument presented to the trial court."

*Edwards*, 41 Va. App. at 761.  Accordingly, Rule 5A:18 bars us from reaching the merits of

Mouzon's argument, which he asserts for the first time on appeal.[1]

## B. *Sufficiency of the Evidence*

Mouzon contends that the evidence was insufficient to prove aggravated malicious

wounding because "there was no evidence" that the victim sustained "permanent and significant

physical impairment."  We disagree.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is

presumed correct and will not be disturbed unless it is plainly wrong or without evidence to

support it.'"  *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original)

(quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)).  "In such cases, '[t]he Court does

not ask itself whether *it* believes that the evidence at the trial established guilt beyond a

reasonable doubt.'"  *Id.* (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)).  "Rather,

the relevant question is whether '*any* rational trier of fact could have found the essential elements

of the crime beyond a reasonable doubt.'"  *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016)

(quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).

"If any person maliciously shoots, stabs, cuts or wounds any other person, or by any means

causes bodily injury, with the intent to maim, disfigure, disable or kill," he is guilty of aggravated

malicious wounding "if the victim is thereby severely injured and is caused to suffer permanent and

significant physical impairment."  Code § 18.2-51.2(A).  Under that statute, a "physical

---

[1] Mouzon does not invoke Rule 5A:18's good cause or ends of justice exceptions, and
this Court will not do so sua sponte.  *Edwards*, 41 Va. App. at 761.

impairment" is "any physical condition, anatomic loss, or cosmetic disfigurement." *Lamm v. Commonwealth*, 55 Va. App. 637, 644 (2010) (quoting *Newton v. Commonwealth*, 21 Va. App. 86, 90 (1995)). "The word 'permanent' has been defined as 'continuing or enduring (as in the same state, status, place) without fundamental or marked change.'" *Ellis v. Commonwealth*, 70 Va. App. 385, 392 (2019) (quoting *Webster's Third New International Dictionary* 1683 (3d ed. 1993)).

"[T]o prove a physical impairment is permanent under Code § 18.2-51.2, 'the Commonwealth need not present definitive testimony that a victim's injuries will never improve' and . . . the determination of permanency is left to the 'common sense of the [finder of fact].'" *Id.* (third alteration in original) (quoting *Lamm*, 55 Va. App. at 644-45). Nor is expert testimony required to prove the significance and permanence of the victim's injuries. *Martinez v. Commonwealth*, 42 Va. App. 9, 24-25 (2003). Thus, this Court has held that "permanent and significant" impairments include "visible scars and scars connected to nerve damage." *Ellis*, 70 Va. App. at 392; *see also Newton*, 21 Va. App. at 90 (finding victim suffered permanent and significant physical impairment where defendant cut his cheek with a razor blade and caused visible scarring); *Martinez*, 42 Va. App. at 24-25 (finding permanent and significant physical impairment where victim suffered scarring and nerve damage from gunshot wound).

The record established that Mouzon "severely injured" Kamren and caused him to suffer "permanent and significant impairment" by shooting him. Code § 18.2-51.2(A). Unchallenged evidence established that Mouzon shot Kamren repeatedly with a firearm. A bullet lodged in Kamren's foot, and another penetrated his abdomen and damaged his internal organs, including his stomach, liver, and intestines. Kamren's subsequent surgery and hospitalization, while life-saving, nonetheless did not prevent visible scarring and ongoing health complications. Indeed, when Kamren underwent surgery to remove the bullet from his abdomen, doctors removed and reattached a portion of his colon, which an expert opined could cause Kamren to develop permanent internal

scarring that might induce bowel obstructions. Moreover, over a year after the shooting, Kamren had visible scars on his abdomen and foot from his injuries. And at the time of Mouzon's trial—over two years after the shooting—Kamren testified that he continued to experience "medical issues" from the bullet still lodged in his foot and that his injuries had prevented him from working. Collectively, that evidence permitted the jury to infer that Kamren's gunshot wounds were severe and caused him permanent and significant physical impairment. Thus, the evidence was sufficient to support the conviction.

### III. CONCLUSION

We hold that Mouzon's evidentiary challenge is procedurally defaulted and that the evidence was sufficient to sustain his conviction for aggravated malicious wounding. Accordingly, we affirm the trial court's judgment.

*Affirmed.*