COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Chief Judge Decker, Judges Fulton and Ortiz
Argued at Norfolk, Virginia


MILTON FRANKLIN MIZELL

                                           MEMORANDUM OPINION[*] BY

v.      Record No. 0052-23-1               JUDGE JUNIUS P. FULTON, III
                                                  APRIL 2, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
L. Wayne Farmer, Judge

Brett P. Blobaum, Senior Appellate Attorney (Virginia Indigent
Defense Commission, on briefs), for appellant.

Jessica M. Bradley, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


The Circuit Court for the City of Suffolk convicted Milton Franklin Mizell of aggravated malicious wounding and abduction, in violation of Code §§ 18.2-51.2 and 18.2-47, respectively. Mizell also entered a guilty plea to a charge of assault and battery of a family member, in violation of Code § 18.2-57.2. Mizell asserts that the trial court erred in finding the evidence sufficient to support his convictions for aggravated malicious wounding and abduction, and he maintains that the trial court abused its discretion by imposing a lengthier period of suspension than that which is authorized by statute for the assault and battery of a family member charge. For the following reasons, we find no error and affirm the judgment.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  In doing so, we "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn [from that evidence]." *Ray v. Commonwealth*, 74 Va. App. 291, 307 (2022) (alteration in original) (quoting *Bagley v. Commonwealth*, 73 Va. App. 1, 26 (2021)).

On May 2 and 3, 2020, Mizell and his girlfriend R.P.[1] lived together in a rented room on the second floor of a boarding house.  On the morning of May 2, 2020, Mizell locked R.P. in their room and left for work.[2]  He did not return until around 5:00 a.m. the next morning.  R.P. was "really upset" because Mizell did not return all night to let her out.  She had to use the bathroom in a trashcan and had nothing to eat.  On his return, R.P. confronted Mizell, but he told her to "shut up" and "stop talking."  When she asked where he had been all night, Mizell "got in [her] face" and hit her.  The blow left her bloody and unable to defend herself.  When asked how many times Mizell hit her, R.P. struggled to remember and said "[h]onestly, I remember just one hit" with "[a] closed fist."  Following the blow, she almost lost consciousness and she felt dizzy, as blood ran down her face.  R.P. looked into a mirror and was shocked to see that her tooth was pushed back and her lip was split, making it difficult to speak.  Mizell frantically stated, "look what you made me do."  He said he would go "make a plug" and left the room, again locking her inside.  R.P. found Mizell's cell phone and called 911.

---

[1] We refer to the victim by her initials in an attempt to protect her privacy.

[2] The door was secured with a padlock on the outside of the door.  R.P. did not have a key to the door or the padlock.

Officer Daniel Nesbitt responded to R.P.'s call for help. He located R.P.'s room and observed that the door was locked on the outside with a padlock. Officer Nesbitt kicked the door in to make entry into R.P.'s room. He did not see any other safe exit from the room except the door.

R.P. spent four days in the hospital enduring several surgeries for her gums and teeth. Her medical records indicated that she suffered several facial fractures including to the bottom part of her jaw and beneath her eye, a "[l]ip laceration," and two lacerations to the inside of her left lower lip. At the time of trial in October 2022, the left side of R.P.'s mouth was still numb and she had wires in her mouth holding her tooth in place. There was no anticipated date scheduled for removal of the wires.

The trial court convicted Mizell of aggravated malicious wounding and abduction. The trial court sentenced Mizell to 25 years in prison, with 10 years suspended, for the aggravated malicious wounding charge, 10 years in prison, with 5 years suspended, for the abduction charge, and 12 months in jail, with 12 months suspended, for the assault and battery of a family member charge. The trial court's misdemeanor sentencing order specifically stated that it was suspending the 12-month sentence "for a period beginning today [December 22, 2022] and continue [sic] for a period of 12 months after the defendant's release from incarceration." The terms of suspension mirrored those ordered for the felony convictions, each of which had partially suspended sentences. This appeal followed.

ANALYSIS

I. Sufficiency of the Evidence

In his first two assignments of error, Mizell argues that the trial court erred in finding sufficient evidence to convict him for aggravated malicious wounding and abduction. Mizell specifically asserts that the trial court erred in finding the evidence sufficient to support his conviction for aggravated malicious wounding where (1) the evidence failed to prove he intended to

maim, disfigure, disable or kill R.P. and (2) the evidence failed to prove R.P. suffered a permanent and significant injury. Mizell also contends that the trial court erred in denying his motion to strike the abduction charge because (1) the evidence failed to establish that he used force, intimidation, or deception and (2) the evidence was insufficient to prove he intended to deprive R.P. of her personal liberty. Because we find that the Commonwealth's evidence sufficiently proved the elements of each offense, we affirm the convictions.

## II.  Standard of Review

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

This deferential standard of review "applies not only to the historical facts themselves, but the inferences from those facts as well." *Crowder v. Commonwealth*, 41 Va. App. 658, 663 n.2 (2003). "The inferences to be drawn from proven facts, so long as they are reasonable, are within the province of the trier of fact." *Hancock v. Commonwealth*, 12 Va. App. 774, 782 (1991). Thus, a fact finder may "draw reasonable inferences from basic to ultimate facts," *Haskins v.*

*Commonwealth*, 44 Va. App. 1, 10 (2004) (quoting *Pease v. Commonwealth*, 39 Va. App. 342, 355 (2002)), unless doing so would push "into the realm of *non sequitur*," *Thomas v. Commonwealth*, 48 Va. App. 605, 608 (2006) (quoting *Crowder*, 41 Va. App. at 665). Such deference stems, in part, from the trial court's "opportunity to observe the testimony and demeanor of all witnesses." *Lopez v. Commonwealth*, 73 Va. App. 70, 81 (2021). Accordingly, settled principles dictate that "[d]etermining the credibility of witnesses . . . is within the exclusive province of the [fact finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (second alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)).

### III. Aggravated Malicious Wounding

"If any person maliciously shoots, stabs, cuts or wounds any other person, or by any means causes bodily injury, with the intent to maim, disfigure, disable or kill," he is guilty of aggravated malicious wounding "if the victim is thereby severely injured and is caused to suffer permanent and significant physical impairment." Code § 18.2-51.2(A). Arguing that the evidence established that he struck only one blow, Mizell does not dispute that his actions were malicious or that he wounded R.P.; he merely contends that the evidence failed to prove he *intended* to seriously wound her, and he denies that she suffered *permanent and significant* injury.

"Intent is the purpose formed in a person's mind at the time an act is committed. Intent may, and often must, be inferred from the facts and circumstances of the case, including the actions and statements of the accused." *Johnson v. Commonwealth*, 53 Va. App. 79, 100 (2008) (quoting *Commonwealth v. Taylor*, 256 Va. 514, 519 (1998)). It is axiomatic that the question of whether a defendant possessed the requisite intent normally rests with the trier of fact, *Nobles v. Commonwealth*, 218 Va. 548, 551 (1977), and that the fact finder may infer a "person intends the natural and probable consequences of his or her acts," *Velasquez v. Commonwealth*, 276 Va. 326,

- 5 -

330 (2008). To that end, "an assault with the bare fists may be attended with such circumstances of violence and brutality that an intent to maim, disfigure, disable, or kill will be presumed." *Shackelford v. Commonwealth*, 183 Va. 423, 426 (1945); *see also Johnson*, 53 Va. App. at 101 ("[A] person may be found to have intended permanent harm by an attack with fists where the assailant employs sufficient brutality.").

With respect to the element of permanent and significant physical impairment, we have said that "physical impairment" is "any physical condition, anatomic loss, or cosmetic disfigurement." *Lamm v. Commonwealth*, 55 Va. App. 637, 644 (2010) (quoting *Newton v. Commonwealth*, 21 Va. App. 86, 90 (1995)). "The word 'permanent' has been defined as 'continuing or enduring (as in the same state, status, place) without fundamental or marked change.'" *Ellis v. Commonwealth*, 70 Va. App. 385, 392 (2019) (quoting *Webster's Third New International Dictionary* 1683 (3d ed. 1993)). In order to prove that a physical impairment is permanent under Code § 18.2-51.2, "the Commonwealth need not present definitive testimony that a victim's injuries will never improve." *Id.* (quoting *Lamm*, 55 Va. App. at 644). Nor is expert testimony required to prove the significance and permanence of the victim's injuries. *Martinez v. Commonwealth*, 42 Va. App. 9, 24-25 (2003). "[T]he determination of permanency is left to the 'common sense of the [finder of fact].'" *Ellis*, 70 Va. App. at 392 (second alteration in original) (quoting *Lamm*, 55 Va. App. at 644).

The evidence in this case proved that Mizell left R.P. locked in their room in the morning hours of May 2, 2020, until the early morning hours of May 3, 2020. Upon his return, R.P. was naturally upset because she was left without food or the ability to use a bathroom all day and overnight. When confronted, rather than apologizing, Mizell told R.P. to "shut up" and "stop talking." When R.P. continued to speak, Mizell struck her. R.P. did not recall how many blows she endured, but she testified that she remembered Mizell throwing one punch to her face that almost knocked her out and caused her to feel dizzy. Blood began to stream down her face. Her tooth was

- 6 -

pushed back, and her lip was split. Then, following the assault, Mizell showed a complete lack of remorse by blaming R.P. for the attack. After striking R.P., Mizell did not take any action to address her obviously serious injuries nor did he seek medical assistance for her. Instead, he left her, injured, in the locked room and fled, not taking any action to potentially mitigate the permanency of R.P.'s injuries. "[E]vidence of flight may be considered as evidence of guilt along with other pertinent facts and circumstances." *Hope v. Commonwealth*, 10 Va. App. 381, 386 (1990) (en banc). Additionally, medical records showed that R.P. endured broken bones in her face and lacerations on her lip. Her injuries were so severe that she remained in the hospital for at least four days and underwent several surgeries for her gums and teeth. At the time of trial more than two years later, her lip was still numb and she had wires in her mouth holding her tooth in place.

The totality of this evidence sufficiently proved the elements of aggravated malicious wounding. Even if merely a single blow, the blow to R.P.'s face was attended with such circumstances of violence and brutality that a reasonable fact finder could infer Mizell possessed the requisite intent to maim, disable, disfigure, or kill R.P. and that his actions resulted in permanent and significant injury. Because the trial court's findings are not plainly wrong or without supporting evidence, we are bound by them. We, therefore, affirm the conviction for aggravated malicious wounding.

## IV. Abduction

"Any person who, by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes another person with the intent to deprive such other person of his personal liberty . . . shall be deemed guilty of abduction." Code § 18.2-47(A). "[T]he *actus reus* of the crime is a taking, transporting, or detention of another, while the *mens rea* of the crime is a specific intent to deprive another of her liberty." *Brown v. Commonwealth*, 74 Va. App. 721, 730-31 (2022). "A defendant detains his victim by keeping the victim in a specific

place 'through the use of force, intimidation, or deception.'" *Id.* at 731 (quoting *Commonwealth v. Herring*, 288 Va. 59, 74 (2014)). Proof of asportation is not required. "[M]ere detention is sufficient under Code § 18.2-47 to establish abduction." *Walker v. Commonwealth*, 272 Va. 511, 517 (2006). Again, "[i]ntent is the purpose formed in a person's mind and may, like any other fact, be shown by circumstances, including the 'words or conduct' of the alleged offender." *Fary v. Commonwealth*, 77 Va. App. 331, 342 (2023) (quoting *Secret*, 296 Va. at 228-29).

In this case, after striking a blow to R.P. that caused multiple serious injuries, Mizell again secured the door with a padlock and exited the boarding house, leaving R.P. bleeding, alone, dizzy, and nearly unconscious.[3] When asked if she gave Mizell permission to lock her in the room and leave here there, R.P. said, "No." R.P. also did not consent to being locked in the room the previous day, for more than 18 hours without food, fresh air, or access to the bathroom. After the blow, she felt scared and had to wait until after the police arrived to obtain necessary medical care. Officer Nesbitt had to kick the door in to gain access to the room, and he testified that he did not see any other safe exit from the room. Contrary to Mizell's suggestion, R.P. was not required to jump out of a second story window, nor was she required to scream for help. The crime of abduction was completed when Mizell purposely locked R.P. in the room, scared and bleeding. In doing so, he knowingly and intentionally deprived R.P. of her personal liberty without legal justification or excuse.

In short, the trial court did not err in concluding that the evidence was sufficient to support a conviction for abduction.

---

[3] The trial court's finding of abduction was based on Mizell's conduct after his arrival on May 3, 2020. The trial court did not make a ruling as to whether locking R.P. in the room prior to the blow was an abduction.

- 8 -

V. Sentencing

Mizell argues that the trial court exceeded the period of suspension allowed by Code § 19.2-303.1 for his misdemeanor conviction. We note that the trial court's misdemeanor sentencing order conflates the period of suspension for the misdemeanor offense with the period of suspension ordered for the felonies. In light of the ambiguity created by the order's disparity with the record, we find that this was a clerical error. Accordingly, we remand this case for the trial court to correct the clerical error in the sentencing order to comply with Code § 19.2-303.1.

CONCLUSION

For the foregoing reasons, we affirm Mizell's convictions for aggravated malicious wounding and abduction, but we remand this case to the trial court to correct the clerical error in the sentencing order for the assault and battery of a family member conviction.

*Affirmed and remanded.*