# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Ortiz, Frucci and Bernhard
Argued at Fairfax, Virginia


JESSICA MARIE STEINMETZ

                                               MEMORANDUM OPINION[*] BY
v.         Record No. 0190-24-4                JUDGE DANIEL E. ORTIZ
                                               JUNE 17, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Victoria A.B. Willis, Judge

James Joseph Ilijevich for appellant.

Anna M. Hughes, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


A jury convicted Jessica Marie Steinmetz of aggravated malicious wounding and domestic

assault and battery, third offense.  On appeal, Steinmetz argues that the evidence was insufficient to

prove malice or domestic assault and battery, that her ex-boyfriend and victim Robert Scott's

testimony was inherently incredible, and that the trial court erred by limiting testimony at

sentencing.  We find that Steinmetz's conduct and use of a deadly weapon was sufficient to support

the jury's conclusion that she acted with malice and that there was sufficient evidence to show that

Steinmetz assault and battered Scott.  We also find that Scott's inconsistent statements did not

render his trial testimony so manifestly false that it was unworthy of belief.  Finally, it was not an

abuse of discretion for the trial court to limit Scott's sentencing testimony to the factors in Code

§ 19.2-299.1(i) through (vi).  Finding no error, we affirm.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

## BACKGROUND[1]

Robert Scott and Steinmetz were in a relationship from 2012 to November 2021; they have two children together. Scott and Steinmetz lived together for about eight years of their relationship.

On the night of January 7, 2021, Scott and Steinmetz argued about whether Steinmetz had been honest with Scott about where, and with whom, she spent her time. Steinmetz was angry that Scott did not believe her. Towards the end of the argument, Scott went out onto their front porch to smoke a cigarette and "get away from the kids and stuff." Steinmetz followed Scott, "got really mad," and told Scott something like "I wish you'd die." She then grabbed a nearby "big kitchen knife" and "threw it at" Scott. Steinmetz was standing "like three of four feet away" from Scott and, when she released the knife, it was "within a foot or so" of Scott's abdomen. After throwing the knife, Steinmetz "stormed in[to] the house and slammed the door behind her."

The knife lodged in Scott's abdomen. Scott felt the blade pierce his skin but did not feel it exit and, when he looked down, he saw the knife "sticking out of" his abdomen. Panicked, Scott pulled the knife out. He then went inside the home to get his car keys to drive himself to the hospital.

Inside, Scott met Steinmetz in the hallway, showed her his bleeding wound, and told her that she had stabbed him. Steinmetz told Scott not to go to a hospital and that she would take care of his wound, but Scott said that he wanted to go to a hospital and continued searching for his keys. By the time Scott found his keys, Steinmetz had gathered first aid supplies and begged Scott to

[1] "Consistent with the standard of review when a criminal appellant challenges the sufficiency of the evidence, we recite the evidence below 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). This standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

reconsider. Scott reiterated that he would go to a hospital. Steinmetz followed Scott to the car and asked what Scott would say happened. When Scott said that he did not know what he would say, Steinmetz replied "great, so you're going to put me in jail."

At the hospital, Scott reported that he "had been stabbed," and the staff treated and closed the one-to-two-inch wound with two medical staples. A police officer soon arrived to speak with Scott. Scott then claimed his injury was from an accident. He told the officer that he "had moved a box and the knife fell out of the box and stuck into" him. Scott repeated this account to another officer. After he was discharged from the hospital, Scott returned home but Steinmetz was gone. Two or three days later, Steinmetz returned, and Scott told her what he reported to the officers.

In February 2021, Stafford County Sheriff's Deputy Virginia Powell interviewed Steinmetz about the incident. Steinmetz denied that she was home when Scott was injured and said that she and the children were at her mother's house. She told Deputy Powell that she learned from Scott that "he had gotten a knife in his belly." Scott told her that he tried to get something from the box, but she did not otherwise know what he was doing with it. Steinmetz offered differing accounts of her whereabouts before the accident and when she returned home, but claimed that when she returned, she saw a box and things on the ground, which she cleaned up. She denied seeing a bloody knife or blood around the house. Steinmetz claimed that she put some of the children's toys in the box and took it with her to her mother's house.

A grand jury later indicted Steinmetz for aggravated malicious wounding, malicious wounding, and domestic assault and battery, third offense. At trial, the Commonwealth entered Steinmetz's prior convictions into the record. All three convictions were for assault and battery of Scott from 2020 to 2021.

Scott testified that he and Steinmetz argued because she had been gone for a few days, during which Scott had been unable to locate her. But when Steinmetz returned, she claimed to

have been at her mother's house the entire time. Steinmetz often lied to him about her whereabouts. He added that Steinmetz was to his side when she threw the knife, not directly in front of him. Still, "out of the corner of [his] eye," he saw Steinmetz "grab something out of the cabinet and throw it at" him; he did not "see exactly what it was until it was in" him. About three inches of the blade pierced his skin.

Scott admitted that he "may have" told hospital staff that he was wounded when a knife fell out of a box. He acknowledged telling the same story to multiple officers and telling them that Steinmetz was not home when he was injured. Scott also admitted that he initially lied to some of his family and coworkers about what happened. He explained that he initially did not tell officers what Steinmetz had done because he was used to being abused and "didn't want [Steinmetz] to get in trouble" because she is the mother of his children. He also believed Steinmetz's threat that she knew people who would "hurt . . . or get rid of" him if he "ever tried to get her in trouble or take the children from her." But, when Scott and Steinmetz's relationship ended in November 2021, Scott's family and others convinced him to "tell the truth about what happened" and that he should not "let her get away with" harming him. So, in July 2022, Scott told Powell that Steinmetz had caused his injury. Scott denied hitting, punching, or attacking Steinmetz in any way on the night she wounded him.

Photographs taken after the incident depict Scott's abdomen, with two medical staples closing his wound, and the shirt Scott was wearing when stabbed. Scott's blood is visible on the shirt along with a tear where the knife pierced the fabric. Scott also showed the jury the scar left on his abdomen. At some point, officers recovered the knife, a standard large kitchen knife.

Powell testified that on the night of the incident, Scott told her the "box" version of events. Scott stuck to that story even when Powell "press[ed] him," but he also repeatedly stated that he "didn't want [Steinmetz] to get in trouble." When Powell spoke with Scott in March

- 4 -

2021, he maintained that he was hurt because a box fell. Powell did not speak with Scott again until July 2022.

At the close of the Commonwealth's case, Steinmetz moved to strike the evidence. Steinmetz argued that Scott was inherently incredible because he repeatedly told one version of events for 18 months before changing his story. The court denied the motion.

Steinmetz presented no evidence and renewed her motion to strike on the same grounds. The court also questioned the Commonwealth about the intent and significant and permanent physical impairment elements of the aggravated malicious wounding charge. The Commonwealth argued that Scott's scar satisfied the physical impairment requirement. It also asserted that malice could be inferred from Steinmetz's use of the knife and by Steinmetz's comment shortly before throwing it. Recognizing that Scott's credibility was "the crux of" the case, the trial court found that his testimony was not inherently incredible and denied Steinmetz's motion. After argument from counsel, the jury convicted Steinmetz of aggravated malicious wounding[2] and domestic assault and battery, third offense.

At sentencing, Scott read from a written statement. He said that he did not believe Steinmetz acted with "malice or intentionally." He believed that "there [was no] way she could have known that the knife was there on the shelf with all of the junk that was there" and "she grabbed a handful of what she thought was just random little junk to throw, not knowing that the knife was part of it." He claimed that she would not "have wanted that to happen to" him and "she should not miss out on her children and grandchildren growing up because of an accident." Scott denied that his testimony was a "contrast" to his trial testimony because he knew that she grabbed things but did not believe she knew exactly what she grabbed.

---

[2] The court dismissed the malicious wounding charge as a matter of law.

- 5 -

When counsel asked Scott if it was "fair to say" that he did not testify to "that version of the facts to the jury," the Commonwealth objected that the question was "far beyond the scope of sentencing." The trial court voiced concern that counsel was "leading [Scott] clearly into a perjury charge," and cautioned Scott. Scott maintained that he did not believe his testimony conflicted and "just [thought] maybe she didn't intend for it to happen in that way." The court explained to Scott that he could not "testify to . . . her intentions" but could testify about "the impact it has had on [him] personally." It made clear that it would "not retry[] this case" at sentencing. Steinmetz's counsel "appreciate[d]" the court's admonition and said he would "move on." Scott asked the trial court to impose a shorter rather than longer sentence.

Steinmetz introduced character letters from family, friends, and a former boss. Steinmetz also gave an allocution. Following arguments from counsel, the trial court sentenced Steinmetz to 23 years' incarceration, with 17 years and 3 months suspended. Steinmetz appeals, challenging the sufficiency of the evidence to sustain her convictions and the scope of testimony allowed at sentencing.

ANALYSIS

I. Sufficiency of the Evidence

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court to decide "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the [factfinder] at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Further, we defer to the fact finder's credibility determinations unless the witness's testimony is "inherently incredible, or so contrary to human experience as to render it unworthy of belief." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019) (quoting *Johnson v. Commonwealth*, 58 Va. App. 303, 315 (2011)). We do so because "[d]etermining the credibility of witnesses . . . is within the exclusive province of the [factfinder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Maust v. Commonwealth*, 77 Va. App. 687, 702 (2023) (en banc) (first alteration in original) (quoting *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015)). Thus, "[w]hen 'credibility issues have been resolved by the [factfinder] in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong.'" *Id.* at 703 (quoting *Towler v. Commonwealth*, 59 Va. App. 284, 291 (2011)).

### A. Malice

Steinmetz argues that the Commonwealth failed to prove that she acted with malice because the evidence did not demonstrate she intentionally threw a knife, versus any object within her reach, and she "did not [otherwise] take any physical action toward Scott" during their argument. We disagree.

- 7 -

To prove aggravated malicious wounding, the Commonwealth must show that the defendant stabbed, cut, wounded, or "by any means" inflicted a bodily injury on the victim "maliciously . . . with the intent to maim, disfigure, disable or kill." Code § 18.2-51.2(A). Further, "the injuries inflicted on the victim must be both a 'significant physical impairment' and 'permanent.'" *Alston v. Commonwealth*, 77 Va. App. 639, 650 (2023) (quoting *Lamm v. Commonwealth*, 55 Va. App. 637, 644 (2010)) (holding that loss of teeth was "a significant and permanent injury"); Code § 18.2-51.2(A). A "physical impairment" is "any physical condition, anatomic loss, or cosmetic disfigurement." *Lamm*, 55 Va. App. at 644 (quoting *Newton v. Commonwealth*, 21 Va. App. 86, 90 (1995) (holding that injuries that required 10 to 20 stitches and resulted in cosmetic disfigurement constituted "permanent and significant" physical impairment)).

"Malice inheres in the 'doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will.'" *Tizon v. Commonwealth*, 60 Va. App. 1, 11 (2012) (quoting *Dawkins v. Commonwealth*, 186 Va. 55, 61 (1947)). "Malice may exist alongside and arise from 'anger, hatred[,] and revenge' as well as any other 'unlawful and [unjustified] motive.'" *Meade v. Commonwealth*, 74 Va. App. 796, 813 (2022) (alterations in original) (quoting *Watson-Scott v. Commonwealth*, 298 Va. 251, 256 (2019)). A defendant acts with malice when she "commit[s] a purposeful and cruel act without any or without great provocation." *Synan v. Commonwealth*, 67 Va. App. 173, 187 (2017) (quoting *Robertson v. Commonwealth*, 31 Va. App. 814, 823 (2000)). Whether a defendant acted with malice is a question of fact, which circumstantial evidence may prove. *Palmer v. Commonwealth*, 71 Va. App. 225, 237 (2019). "[M]alice may be either express or implied by conduct." *Watson-Scott*, 298 Va. at 256 (quoting *Essex v. Commonwealth*, 228 Va. 273, 280 (1984)). "Indeed, '[m]alice is implied by law from any deliberate, willful, and cruel act against another, however sudden.'" *Witherow v. Commonwealth*, 65 Va. App. 557, 566 (2015) (alteration in original) (quoting *Epperly v. Commonwealth*, 224 Va. 214, 231 (1982)).

And it "may be implied from the deliberate use of a deadly weapon." *Watson-Scott*, 298 Va. at 256 (quoting *Smith v. Commonwealth*, 239 Va. 243, 264 (1990)).

Here, there was sufficient evidence, in more ways than one, to support the jury's finding that Steinmetz acted with malice. *Palmer*, 71 Va. App. at 237. First, "[m]alice may be inferred from [Steinmetz's] deliberate use of a deadly weapon," namely the knife. *Luck v. Commonwealth*, 32 Va. App. 827, 834 (2000); *Morris v. Commonwealth*, 17 Va. App. 575, 577-78 (1994) (noting a knife was a deadly weapon). Second, "malice may be either express or implied by conduct." *Watson-Scott*, 298 Va. at 256 (quoting *Essex*, 228 Va. at 280). The force of Steinmetz's throw at a short distance caused the knife to lodge three inches into Scott's abdomen. And the jury was entitled to infer malice from Steinmetz's words. Indeed, a factfinder may infer malice from evidence that a defendant was "extremely angry" at the victim. *Virginia v. Commonwealth*, 17 Va. App. 684, 688 (1994); *Robertson*, 31 Va. App. at 823 (noting words can be direct evidence of malice). When Scott tried to distance himself from the verbal altercation with her, Steinmetz pursued him. "She got really mad" at Scott and, without provocation, threw a large kitchen knife at him. She also remarked shortly before throwing the knife at Scott that she "wish[ed]" he would die.

Faced with competing narratives, the jury was entitled to accept Scott's trial testimony and reject alternative explanations. The jury's conclusion that Steinmetz acted with malice is thus not plainly wrong or without supporting evidence.

### B. Domestic Assault and Battery

Steinmetz asserts that "the activities of both persons leading up to the knife injury do not, by themselves, provide sufficient evidence that [she] acted unlawfully." We disagree.

It is unlawful for anyone to "commit[] an assault and battery against a family or household member." Code § 18.2-57.2(A). A person commits an assault when she "attempt[s] or offer[s],

with force and violence, to do some bodily hurt to another." *Parish v. Commonwealth*, 56 Va. App. 324, 329 (2010) (quoting *Adams v. Commonwealth*, 33 Va. App. 463, 468 (2000)). "A battery is the 'willful or unlawful touching of the person of another by the assailant, or by some object set in motion by [her].'" *Woodson v. Commonwealth*, 74 Va. App. 685, 693 (2022) (quoting *Wood v. Commonwealth*, 149 Va. 401, 404 (1927)); *see also Parish*, 56 Va. App. at 330 (noting that an assault becomes battery upon the "wil[l]ful or unlawful touching" of the victim (alteration in original) (quoting *Wood*, 149 Va. at 404)).

"To sustain a conviction for battery, the Commonwealth must prove a 'wil[l]ful or unlawful touching' of another." *Yellock v. Commonwealth*, 79 Va. App. 627, 641 (2024) (alteration in original) (quoting *Parish*, 56 Va. App. at 330). "An intentional touching qualifies as a battery unless the actor has some legal justification or excuse." *Woodson*, 74 Va. App. at 694. "Whether a touching is a battery, depends on the intent of the actor, not the force applied." *Yellock*, 79 Va. App. at 641 (quoting *Parish*, 56 Va. App. at 330). "The law is clear that '[t]he slightest touching of another . . . if done in a rude, insolent, or angry manner, constitutes a battery for which the law affords redress.'" *Kelley*, 69 Va. App. at 628 (alterations in original) (quoting *Adams*, 33 Va. App. at 469). "In such circumstances, '[t]he unlawful intent may be imputed.'" *Id.* (alteration in original) (quoting *Parish*, 56 Va. App. at 331).

Scott testified that he lived with Steinmetz and they argued on January 7, 2021. During the argument he attempted to distance himself from Steinmetz, but she followed him. Then, "[s]he got really mad," stated she wished he would die, and threw a knife at him. The knife pierced Scott's skin and lodged in his abdomen. And a battery can occur when a defendant sets an object in motion that strikes the victim. *Woodson*, 74 Va. App. at 693. Based on this evidence, a rational juror could reasonably find that Steinmetz committed an assault and battery against Scott.

*Barney*, 302 Va. at 97; *Woodson*, 74 Va. App. at 693-94. The jury's finding is therefore neither plainly wrong nor without evidentiary support. *Pijor*, 294 Va. at 512.

## C. Credibility

Steinmetz also argues that Scott's testimony was inherently incredible because he repeatedly told one version of the events before changing his story 18 months later, and his testimony about "the mechanism of the knife injury" was "unbelievable." She also claims that Scott's testimony at sentencing further reveals his inherent incredibility at trial. We again disagree.

"To be 'incredible,' testimony 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Kelley*, 69 Va. App. at 626 (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)). "Testimony may be contradictory or contain inconsistencies without rising to the level of being inherently incredible as a matter of law." *Id.* And "[t]he mere fact that a witness may have delayed in reporting knowledge of a case or given inconsistent statements during the investigation of a crime does not necessarily render the testimony unworthy of belief." *Juniper*, 271 Va. at 415. Such circumstances are instead "appropriately weighed as part of the entire issue of witness credibility, which is left to the jury to determine." *Id.*

Scott's testimony was not inherently incredible. Scott admitted that he gave differing accounts of how he sustained the stab wound and initially covered for Steinmetz. But Scott's inconsistent statements did not render his testimony so manifestly false that it was unworthy of belief; they were merely a circumstance for the jury to weigh in assessing his credibility. *Id.* The jury had the opportunity to view Scott's demeanor when he explained those inconsistencies—that he initially did not want to get Steinmetz in trouble, that he believed Steinmetz's prior threats of

- 11 -

retribution if he acted against her, and that he came forward with the truth after the relationship ended. The jury also had the chance to consider Steinmetz's statements and demeanor during her interview with Powell.

What is more, Scott's testimony about the manner of his injury is not manifestly unbelievable. Steinmetz asserts that Scott's testimony is unbelievable because he claimed Steinmetz threw a six-to-seven-inch knife from "less than one foot away from" Scott. Albeit slight, Steinmetz mischaracterizes Scott's testimony. Scott testified that Steinmetz was standing three or four feet away from him and the knife's release point was "within a foot or so." It is not wholly incredible that the knife could lodge itself in Scott's abdomen from that distance, regardless of whether Steinmetz threw the knife or stabbed Scott.

At bottom, after considering the evidence, the jury credited Scott's trial testimony. "When the law says that it is for triers of the facts to judge the credibility of a witness, the issue is not a matter of degree." *Welch v. Commonwealth*, 79 Va. App. 760, 772 (2024) (quoting *Towler*, 59 Va. App. at 291). The jury's findings, including its credibility determinations, are not plainly wrong or without evidence to support them. Thus, the trial court did not err in overruling Steinmetz's motion to strike the evidence.

## II. Scott's Sentencing Testimony

Steinmetz finally argues that the trial court abused its discretion because it improperly curtailed Scott's sentencing testimony which "thereby limit[ed] clearly exculpatory evidence and mitigation evidence for sentencing." We find no error here.

"We review a court's decision to [exclude] evidence at sentencing for an abuse of discretion." *Meekins v. Commonwealth*, 72 Va. App. 61, 68 (2020). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Commonwealth v. Swann*, 290 Va. 194, 197 (2015) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)). Under this

- 12 -

deferential standard of review, when a trial court "has a range of choice," we will not disturb its decision "as long as it stays within that range and is not influenced by any mistake of law." *Carrithers v. Harrah*, 63 Va. App. 641, 653 (2014) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212-13 (2013)). "We apply this 'bell-shaped curve of reasonability' based on our 'venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie.'" *Id.* at 654 (quoting *Hamad v. Hamad*, 61 Va. App. 593, 607 (2013)).

Indeed, "[c]ircuit court judges are vested with broad discretion in admitting evidence and can be expected to exercise that discretion to exclude evidence that does not aid the court in the sentencing phase." *Meekins*, 72 Va. App. at 68 (quoting *Harvey v. Commonwealth*, 65 Va. App. 280, 286-87 (2015)). "In determining the admissibility of evidence at a sentencing hearing, 'the circumstances of the individual case will dictate what evidence will be necessary and relevant, and from what sources it may be drawn.'" *Id.* (quoting *Beck v. Commonwealth*, 253 Va. 373, 384 (1997)).

Code § 19.2-295.3 addresses the admission of victim impact testimony. "[U]pon a finding that the defendant is guilty of a felony, the court shall permit the victim . . . to testify . . . regarding the impact of the offense upon the victim." Code § 19.2-295.3. But "[t]he court shall limit the victim's testimony to the factors set forth in [Code § 19.2-299.1(i) through (vi)]." *Id.* Under Code § 19.2-299.1, a victim's testimony thus can:

> (i) identify the victim, (ii) itemize any economic loss suffered by the victim as a result of the offense, (iii) identify the nature and extent of any physical or psychological injury suffered by the victim as a result of the offense, (iv) detail any change in the victim's personal welfare, lifestyle or familial relationships as a result of the offense, (v) identify any request for psychological or medical services initiated by the victim or the victim's family as a result of the offense, and (vi) provide such other information as the court may require related to the impact of the offense upon the victim.

Here, Scott testified that he did not think Steinmetz acted with malice or meant to throw, or knew that she threw, the knife at him. The Commonwealth objected as beyond the scope of sentencing for defense counsel to ask Scott whether it was "fair to say . . . that version of the facts" differed from Scott's trial testimony. The court, concerned Scott was being led into a perjury charge, cautioned Scott. It properly explained that, rather than "retrying [the] case," Scott could testify about the impact the incident had on him, but not Steinmetz's "intentions." And as the court noted, Steinmetz had the right—which she exercised—to allocute.

At bottom, nothing in Code § 19.2-299.1(i) through (vi) allows Scott to testify as to what he believed Steinmetz's intent was at the time of the crime. We thus cannot say that the trial court's ruling that Scott's testimony was inappropriate was outside its "range of choice" at the sentencing hearing. *Carrithers*, 63 Va. App. at 653 (quoting *Lawlor*, 285 Va. at 212).

CONCLUSION

For these reasons, we affirm the trial court's judgment.

*Affirmed.*